ALLEN ET AL., RAILROAD COMMISSIONERS OF THE STATE OF ARKANSAS, *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

SAME *v.* ST. LOUIS SOUTHWESTERN RAILWAY COMPANY.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

Nos. 440, 441   Argued April 12, 15, 1912.—Decided June 16, 1913.

*Minnesota Rate Cases, ante,* p. 352, followed to effect that an intrastate rate fixed by State Railroad Commission is not an unconstitutional interference with interstate commerce.

A carrier has the right to contest the validity of rates prescribed by a body clothed by the legislature with power to establish rates on the ground they are confiscatory, and this right is not impaired by putting the rates into effect if they prove to be confiscatory.

*Minnesota Rate Cases, ante,* p. 352, also followed to effect that where the proofs submitted by a carrier attacking rates as confiscatory are

not sufficient to justify a finding that the rates are confiscatory, the bill should be dismissed.

187 Fed. Rep. 290, reversed.

THESE two suits were brought to restrain the enforcement of the act of the legislature passed February 9, 1907, fixing the maximum fare for passengers at two cents a mile, and also the orders of the Railroad Commission made June 4, 1908, prescribing maximum freight and passenger rates. The facts involved in both cases are stated in the opinion.

*Mr. Joseph M. Hill* for appellants.

*Mr. John M. Moore*, with whom *Mr. Martin S. Clardy* and *Mr. Samuel H. West* were on the brief, for appellees.

MR. JUSTICE HUGHES delivered the opinion of the court.

The legislature of Arkansas, on February 9, 1907, passed an act fixing the maximum passenger fare within the State, on railroads over eighty-five miles in length, at two cents a mile. On June 4, 1908, the Railroad Commission of the State adopted Standard Distance Tariff No. 3, which superseded the former freight tariff and established maximum intrastate freight rates for all classes and commodities. The requirement with respect to maximum passenger fares as provided by the legislature was also promulgated by the commission.

In July, 1908, the appellees, the St. Louis, Iron Mountain & Southern Railway Company and the St. Louis Southwestern Railway Company, respectively, filed their bills in the Circuit Court, alleging that the action of the legislature and the commission, in fixing these rates, was unreasonable and confiscatory, and also that it amounted

to an unconstitutional interference with interstate commerce. Answers were filed by the defendants, the members of the railroad commission, and voluminous evidence was taken. The court found the rates to be confiscatory and a decree was entered enjoining their enforcement. 187 Fed. Rep. 290. The railroad commissioners appeal.

The contention of the complainants based upon the asserted interference with interstate commerce was rightly overruled by the court below (*Minnesota Rate Cases, ante,* p. 352), and the only question which remains for our consideration is whether the proof was sufficient to sustain the finding of confiscation.

It is said on the part of the commissioners, that the freight tariff No. 3, adopted in 1908, was substantially similar to that which had been prescribed in 1904, and that the latter was in substance a repetition of the first tariff of the commission which had been put into effect in 1900; that is to say, that, while changes had been made from time to time to provide suitable adjustments, there were no substantial differences in the rates imposed by the last tariff, of which complaint was made, as compared with those of the earlier years when considered with respect to the effect upon the freight revenue in its entirety. It is urged, however, by the companies that there were reductions in fact and that, apart from this, there had been a continuous increase in the expenses incident to operation in the State and in the burdens imposed upon the companies; and also that the passenger fare act of 1907 (February 9, 1907, Acts 1907, Act No. 8, p. 9) had largely reduced the revenues of the roads. We deem it to be clear that the right of the complainants to contest the validity of the rates, if, as applied to changed conditions, they were found to be confiscatory, was not impaired by their action in putting them into effect. When these suits were brought, the passenger fare act had been in force for more than a year, but this gave opportunity to

ascertain the actual results, and, even if it were assumed that the new freight tariff of 1908 did not greatly reduce the former rates, the complainants were certainly not barred from presenting to the court their contention that the operation of the rates as a whole deprived them of a fair return from their entire intrastate business.

No question is presented as to the value of the properties within the State which were used by the companies in the public service. This was the subject of a formal stipulation by which it was conceded that the assessments made by the state tax commission, multiplied by two, should represent the value of these properties, respectively, for the purpose of these suits. Upon this basis, the value of the property of the St. Louis, Iron Mountain & Southern Railway Company was found to be $39,986,564; and that of the St. Louis Southwestern Railway Company, $14,029,634.

In the case of the Iron Mountain road, the period taken for the purpose of calculation was the six months ending December 31, 1907. According to the statement of the company, the total earnings from the business in Arkansas, interstate and intrastate, for this period, were $6,675,076.79. The total operating expenses, together with taxes and rentals, amounted, for the same period, to $5,175,301.44. The net earnings for the six months were thus $1,499,775.35; and this amount was equivalent to a return at the annual rate of 7.5 per cent upon the entire value of the property.

The statement submitted by the St. Louis Southwestern company for the six months ending December 31, 1907, showed operating revenues within the State, from both interstate and intrastate business, amounting to $2,288,173.40; and operating expenses, taxes and rentals, aggregating $1,388,075.94, leaving as net earnings for the six months, $900,097,46. We have also, in the case of this company, its statement for the entire fiscal year ending

June 30, 1908, which gives the total operating revenues within the State, interstate and intrastate, as $4,130,011.45, and operating expenses, together with taxes and rentals, amounting to $2,691,287.44, thus leaving net earnings of $1,438,724.01, or more than 10 per cent. upon the value of the property.

The showing thus made, of the returns from the combined business, makes it entirely clear that the ultimate conclusion must depend upon the certainty of the proof with respect to the segregation of the results of the intrastate operations. That is, the controlling questions concern the division of the expenses between interstate and intrastate transportation, and the determination of the share of the total value of the property which is assignable to the latter and upon which the rate of net return is to be computed.

As to the apportionment of value, it appears that the method adopted below was to divide the value of the entire property, as found, between the interstate and intrastate business according to the relation of gross revenue. In view of the fundamental objections to this method, which were considered in Minnesota Rate Cases, ante, p. 352, the results that have been obtained by resort to it in these cases cannot be accepted as affording a sufficient basis for the conclusion that the State has confiscated the property of the company.

In dividing the expenses of operation, the defendants undertook definitely to establish the cost of intrastate traffic as compared with that which was interstate. For this purpose, it was endeavored to attribute to the local and through train services, respectively, their proper shares of expense and in each case to divide the amount of the ascertained share according to the traffic carried. In the case of the Iron Mountain company, traffic statistics were taken for the month of October, 1907; these were analyzed and a division of expenses was made in accordance with

a plan devised by expert accountants. The computations, with respect to the St. Louis Southwestern company, were based upon the operations of October, 1908, as the company had compiled data for that month in making a test of comparative cost. According to these calculations of the defendants, the net return from the entire intrastate business was at the annual rate of 7.09 per cent. for the Iron Mountain road, and 9.16 per cent. for that of the St. Louis Southwestern.

It was objected, however, that the periods selected for these tests were not representative; that the month of October, 1907, in particular, was abnormal because of an unusual congestion of traffic, and that the use of the statistics for October, 1908, was also open to objection as they did not show such a fair average of the business as would enable the court to reach a correct conclusion. The court below took this view, but it was of the opinion that proper allowances might be made which would equalize these conditions. In this view, and for the purpose of correcting assumptions deemed to be erroneous, the court defined the basis of apportionment of the various items of outlay in accordance with which new computations were made. The effect of these calculations was to charge the intrastate freight traffic on the Iron Mountain road with an extra cost of 201.5 per cent. per ton mile. The court, concluding that certain items of the extra cost of local traffic had been omitted, decided that an additional charge of 8.5 per cent. would be reasonable, and that the total extra cost of the intrastate traffic should be placed at 210 per cent. In the case of the St Louis Southwestern company, the extra cost of the intrastate freight traffic was fixed at 250 per cent., this being, it is understood, per ton-mile. With respect to the passenger traffic, the court was of the opinion that the intrastate service should be charged with ten per cent. additional cost in the case of the Iron Mountain company, but that no allowance for extra cost was

necessary in that of the St. Louis Southwestern Company. From the computations on these bases the conclusion was derived that the net return from the entire intrastate business of the Iron Mountain company was at the annual rate of less than one per cent., and from that of the St. Louis Southwestern company, 2.6 per cent., upon the shares of the total property value assigned respectively to the intrastate business.

We shall not attempt to review in detail these calculations upon which the decree is based. While they represent a most serious effort to effect a reasonable apportionment, we are convinced, from our examination of the evidence, that they have the same infirmity which was found to exist in the computations in the *Minnesota* and *Missouri rate cases. Minnesota Rate Cases, ante,* p. 352; *Missouri Rate Cases, ante,* p. 474, decided this day, *ante,* p. 474. On finding, in the present cases, that the periods selected for the purposes of test could not be regarded as fairly representative, the court was left without sufficient data upon which to compute the extra cost of intrastate transportation with such a degree of certainty as would justify the annullment of the State's requirements. Controlling factors, used in the computations, represent general estimates of the conditions of transportation, which may or may not be accurate, and there was an absence of satisfactory evidence, to take the place of the rejected tests, giving with requisite particularity the actual movement of traffic at the times in question and affording a proper basis for the determination of relative cost. The wide variation in results obtained on the different hypotheses, each of which is earnestly supported in argument, illustrates the necessity for the keeping of suitable accounts, at least during typical periods, which will furnish correct statistical information bearing upon the cost of intrastate transportation as compared with interstate, instead of leaving a matter of such in-

tricacy to general expressions of judgment. It was not sufficient for the complainants to criticise the tests relied upon by the defendants, but in seeking to override the action of the State upon constitutional grounds it was incumbent upon them to establish the invalidating facts by definite and convincing proof.

We are of the opinion that the evidence failed to show confiscation.

*The decrees are reversed and the cases remanded with directions to dismiss the bills, respectively, without prejudice.*