Coös,  }
Dec. 1, 1914. }

### State v. Maine Central Railroad & a.

The legislature has power to fix the maximum charge per mile for passenger transportation by railroads.

A statute fixing the maximum charge per mile for mileage books does not discriminate against purchasers of trip tickets, if the railroad is not authorized to charge a higher price per mile for such tickets.

It is not within the power of the legislature to require a common carrier to render transportation service for an unreasonably low price, or to exclude the courts from passing upon the reasonableness of a rate fixed by statute.

Petition for *mandamus*, to compel the defendants to issue and keep for sale in New Hampshire 500-mile mileage books, in accordance with the provisions of chapter 92, Laws of 1913. The petition set out the statute and alleged non-compliance by the defendants. At the April term, 1914, of the superior court, the defendants' demurrer was overruled *pro forma* by *Sawyer*, J., subject to exception.

*James P. Tuttle*, attorney-general (by brief and orally), for the state.

*Drew, Shurtleff, Morris & Oakes* (*Mr. Morris* orally), for the defendants.

Parsons, C. J. This is a petition for a writ of *mandamus* to compel the defendants to comply with chapter 92, Laws of 1913, which provides that all steam railroads operating a passenger service in this state shall hereafter issue 500-mile mileage books at the rate of two cents a mile, good for the transportation of the bearer over all their steam railroad lines in this state, and keep them on sale at their ticket offices in this state, with a proviso excepting certain lines. The defendants demur to the petition. The only facts alleged in the petition are the existence of the statute and the defendants' refusal to comply with it.

Whether the rate fixed by the statute is unreasonable and confiscatory, or deprives the defendant railroad of reasonable compensation for the transportation service required, and whether it discriminates against non-purchasers of mileage books, are all

questions of fact, as is also the question whether the rate was fixed without due investigation, if that be material. These grounds are alleged in support of the demurrer, but they are neither proved nor admitted. If alleged in an answer to which the state demurred, their materiality would be before the court for decision; but it is not understood that the state assents to the verity of the allegations as matter of fact, or contends as matter of law that the legislature has the power to impose upon the defendants the carriage of passengers at a rate less than reasonable for the service rendered, or so low as to amount to confiscation or to a taking of the defendants' property without due process of law. Consideration of these questions is properly left until they are raised by parties at issue over them. Neither is there anything before the court upon the question of discrimination as between purchasers of mileage and trip tickets, if that objection is open to the defendants in opposition to a rate which affords to them a reasonable return for the service rendered. There is nothing here which shows what the customary trip-ticket charge is for transportation on the defendants' road, or whether the customary charge is a reasonable one. Discrimination produced by an unreasonable overcharge for trip tickets cannot render unconstitutional a statute requiring the sale of transportation in 500-mile lots at a reasonable rate. This leaves the only question raised by the demurrer the bald one of legislative power to fix the maximum rate for transportation when taken in 500-mile lots.

That the fixing of rates for transportation is a legislative and not a judicial question, within the power of the state as to transportation wholly within the state up to the point where interference with interstate commerce is reached, is settled by federal authority. "The establishment of a rate is the making of a rule for the future, and therefore is an act legislative, not judicial, in kind." *Holmes, J.*, in *Prentis* v. *Atlantic Coast Line*, 211 U. S. 210, 226. "It is one thing to inquire whether the rates which have been charged and collected are reasonable—that is a judicial act; but an entirely different thing to prescribe rates which shall be charged in the future—that is a legislative act." *Brewer, J.*, in *Interstate Commerce Commission* v. *Railway*, 167 U. S. 479, 499. "Railroad companies are carriers for hire. They are incorporated as such, and given extraordinary power, in order that they may better serve the public in that capacity. They are therefore engaged in a public employment, and . . . subject to legislative control as to their rates of fare and freight unless protected by their charters."

Chicago etc. R. R. v. Iowa, 94 U. S. 155, 161; Munn v. Illinois, 94 U. S. 113. "The legislature has power to fix rates, and the extent of judicial interference is protection against unreasonable rates." Chicago etc. Ry. v. Wellman, 143 U. S. 339, 344; Reagan v. Company, 154 U. S. 362, 398; Minnesota Rate Cases, 230 U. S. 352; Chesapeake etc. Ry. v. Conley, 230 U. S. 513; Allen v. Railway, 230 U. S. 553.

As the fixing of rates is a legislative question, the allegation that this rate was fixed without judicial investigation of its reasonableness and without opportunity for the defendants to be heard is without merit. There is nothing in the case tending to show that the enactment of the statute was not preceded by legislative investigation. Whether it was or not is immaterial. Legislative hearings are not judicial proceedings, and conclusions reached thereby are not res adjudicata. Prentis v. Atlantic Coast Line, 211 U. S. 210, 226, 227. The defendants contend that as the general rate-making power is lodged with the public service commission (Laws 1911, c. 164, s. 11), it was the intention of the legislature to make the mileage rate arbitrary and to exclude evidence of its reasonableness or otherwise, and that hence the law is unconstitutional. But an intent to pass an unconstitutional law is never to be inferred. Although the act in question was passed in 1913, it was passed as an amendment of an act of 1909 requiring the issuance and sale of 1,000-mile mileage books at the same rate. The only general legislation then in effect required rates to be equal and reasonable. P. S., c. 160, s. 1. The legislation was not therefore enacted as a limitation upon the rate-making power confided to the public service commission, but as a legislative judgment of the reasonableness of a particular rate. The rate-making power confided in the commission, subject to the proviso "that the commission shall not allow an increase above any rate prescribed or limited by statute" (Laws 1911, c. 164, s. 11(a)), if it referred to the mileage statute, simply withdrew from the jurisdiction of the commission a matter as to which a legislative judgment had already been rendered. It may be doubtful if the proviso of section 11 was intended to apply to the mileage statute. It is probably the product of the litigation over railroad consolidation and resulting rates which terminated in Clough v. Railroad, ante, 222.

In support of the contention that the rate is arbitrary and the statute unconstitutional, reliance is placed upon Chicago etc. Ry. v. Minnesota, 134 U. S. 418, 456. But that was the case of a statute which attempted to make the conclusions of a commission upon the

reasonableness of a rate final.   In *Budd* v. *New York,* 143 U. S. 517, it is said of this case (*pp.* 545–547): "It is further contended that, under the decision of this court in *Chicago etc. Ry.* v. *Minnesota,* 134 U. S. 418, the fixing of elevator charges is a judicial question, as to whether they are reasonable or not; that the statute must per-mit and provide for a judicial settlement of the charges; and that, by the statute under consideration, an arbitrary rate is fixed and all inquiry is precluded as to whether that rate is reasonable or not. But this is a misapprehension of the decision of this court in the case referred to.   In that case, the legislature of Minnesota had passed an act which established a railroad and warehouse commis-sion, and the supreme court of that state had interpreted the act as providing that the rates of charges for the transportation of prop-erty by railroads, recommended and published by the commission, should be final and conclusive as to what were equal and reasonable charges, and that there could be no judicial inquiry as to the reason-ableness of such rates.   A railroad company, in answer to an appli-cation for a *mandamus,* contended that such rates in regard to it were unreasonable, and, as it was not allowed by the state court to put in testimony in support of its answer, on the question of the reasonableness of such rates, this court held that the statute was in conflict with the constitution of the United States, as depriving the company of its property without due process of law, and de-priving it of the equal protection of the laws.   That was a very dif-ferent case from one under the statute of New York in question here, for in this instance the rate of charges is fixed directly by the legislature.   See *Spencer* v. *Merchant,* 125 U. S. 345, 356.   What was said in the opinion of the court in 134 U. S. had reference only to the case then before the court, and to charges fixed by a commis-sion appointed under an act of the legislature, under a constitution of the state which provided that all corporations, being common carriers, should be bound to carry 'on equal and reasonable terms,' and under a statute which provided that all charges made by a common carrier for the transportation of passengers or property should be 'equal and reasonable.'   What was said in the opinion in 134 U. S., as to the question of the reasonableness of the rate of charge being one for judicial investigation, had no reference to a case where the rates are prescribed directly by the legislature. Not only was that the case in the statute of Illinois in *Munn* v. *Illinois,* but the doctrine was laid down by this court in *Wabash etc. Ry.* v. *Illinois,* 118 U. S. 557, 568, that it was the right of a state to

establish limitations upon the power of railroad companies to fix the price at which they would carry passengers and freight, and that the question was of the same character as that involved in fixing the charges to be made by persons engaged in the warehousing business. So, too, in *Dow* v. *Beidelman*, 125 U. S. 680, 686, it was said that it was within the power of the legislature to declare what should be a reasonable compensation for the services of persons exercising a public employment, or to fix a maximum beyond which any charge made would be unreasonable."

The case *Budd* v. *New York* left open the question whether the courts had power to interfere in case the rates established by statute were found to be unreasonable, because there was nothing in the record to show that the rates were unreasonable (*Reagan* v. *Company*, 154 U. S. 362, 398), but· the power is fully recognized in the case last cited.    The legislature has no power to require a carrier to render service for an unreasonable rate.    "The question of the reasonableness of a rate of charge for transportation by a railroad company, involving as it does the element of reasonableness, both as regards the company and as regards the public, is eminently a question for judicial investigation, requiring the process of law for its determination."    *Chicago etc. Ry.* v. *Minnesota*, 134 U. S. 418, 453.    The legislature cannot take this power from the courts.    If to an act prescribing a rate a proviso should be attached prohibiting the courts from passing upon the reasonableness of the rate, the proviso would be void; but the rate, if reasonable, would be within legislative power.    No express attempt has been made to exclude the courts from passing upon the reasonableness of the mileage statute.    It is useless to attempt to read such an intent into the statute for the sole purpose of declaring such intent ineffectual.

From what has been said it follows that the case *Lake Shore etc. Ry.* v. *Smith*, 173 U. S. 684, relied upon by the defendants, is not now in point.    That case does not hold that a legislative enactment fixing a maximum mileage rate is illegal, but expressly admits the existence of such power, citing cases some of which are hereinbefore referred to.    In that case, as stated in the opinion (*p.* 690), the question presented was "whether the legislature of a state, having power to fix maximum rates and charges for the transportation of persons and property by railroad companies,   .  .  .   has also the right, after having fixed a maximum rate for the transportation of passengers, to still further regulate their affairs, and to discriminate and make an exception in favor of certain persons, and give to them

a right of transportation for a less sum than the general rate provided by law," and the point decided is expressed as follows (*p.* 696): "The legislature having fixed a maximum rate at what must be presumed, *prima facie,* to be also a reasonable rate, we think the company then has the right to insist that all persons shall be compelled to pay alike—that no discrimination against it in favor of certain classes . . . shall be made by the legislature."

It is not alleged in the instant case that the legislature has fixed any maximum rate which must *prima facie* be considered reasonable. In fact, the legislation as to mileage tickets is understood to be the only instance of a legislative attempt to fix a rate. *Clough* v. *Railroad, ante,* 222, 232. So far as the legislature has acted, two cents a mile is the maximum rate. If that is a reasonable rate, there is no discrimination. If it is unreasonable, confiscatory, the defendants have a remedy upon proof of the fact. As the record is now presented, it is unnecessary to further consider the federal case cited which binds this court so far as it correctly declares the federal law as now expressed.

The contention that the statute prescribes in section 2 an excessive, unconstitutional penalty for its violation need not be examined. The state does not ask for action under that clause. The command of section 1 is sufficient authority for the present proceeding. The correct construction and validity of the statute as a limitation of the rate-making power conferred upon the public service commission is not now involved and has not been considered. The order now is,

*Demurrer overruled.*

All concurred.