ROWLAND ET AL., RAILROAD COMMISSIONERS
OF THE STATE OF ARKANSAS, *v.* BOYLE, AD-
MINISTRATOR OF BOYLE, AND THE ST. LOUIS
& SAN FRANCISCO RAILROAD COMPANY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES
FOR THE EASTERN DISTRICT OF ARKANSAS.

No. 252.   Argued February 24, 25, 1916; restored to docket for reargu-
ment June 12, 1916; reargued May 1, 2, 1917.—Decided May 21, 1917.

Giving weight to the opinion of the District Judge who tried the case,
this court upon reviewing the evidence agrees with his conclusion
that, as applied to the appellee railroad company, the two-cent
passenger rate fixed by the Arkansas legislature, and freight rates
fixed by the Arkansas Railroad Commission, are confiscatory.

An objection to evidence as hearsay is too late if not taken when the
evidence was introduced.

While this cause was pending in the trial court, the appellee railroad
company, for the purpose of allocating its expenses to intrastate and
interstate freight and passenger traffic in Arkansas, caused minute
and specific reports to be made by its employees of all facts that
would throw light upon the problem in accordance with prescribed
formulæ and introduced the results in evidence, exhibiting the work-
sheets and other data to the appellant Railroad Commissioners, who
had opportunity to question them and call for further investigation.
*Held,* that the returns were made by the employees in the course of
their business and that an objection that the evidence was hearsay
could not in justice be entertained. *Held,* further, that the two
months of investigation afforded a basis for argument as to constant
conditions.

The possible inaccuracy of apportioning general road maintenance
expenses between freight and passenger service by engine-ton-
miles—considered and *held* not to affect the result of this case.

Whether adoption of the low rates fixed by the State would be followed
by increased intrastate traffic and revenue—*Held,* too remote and
conjectural a matter to disturb the conclusion.

222 Fed. Rep. 539, affirmed.

THE case is stated in the opinion.

*Mr. Joseph M. Hill* and *Mr. S. P. Freeling* for appellants.

*Mr. S. T. Bledsoe* and *Mr. John M. Moore*, with whom *Mr. W. F. Evans* was on the briefs, for appellees.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity originally brought by Wilbur Boyle as a stockholder in the Railroad Company, now one of the appellees, to prevent it from paying, and the Railroad Commission of Arkansas from enforcing, freight rates established by the latter, and a two-cent passenger rate fixed by a statute of 1907, on the ground that both were confiscatory. A temporary injunction was issued, freight rates were adopted higher than those established by the State Commission and the three-cent passenger rate previously in force was restored, a bond being given for keeping accounts and refunding the difference if the final decision should uphold the action of the State. Later by agreement the experiment of a two-and-a-half-cent passenger rate was tried for eighteen months, and the final hearing of the cause was postponed to await the decision of *Allen* v. *St. Louis, Iron Mountain & Southern Ry. Co.*, 230 U. S. 553, in which the same rates were before the court. That decision was rendered on June 16, 1913, and forthwith after that and the others reported in 230 U. S., there was a conference of railroad managers and officials, engineers and others competent to aid, for the purpose of devising formulas for the division of expenses, etc., between local and interstate business in accord with the views of this court, as a step toward determining the constitutionality of this and other rates sought to be imposed by the States. The Railroad Company then made

a laborious attempt to apply the formulas thus reached, and as a result the injunction was made perpetual subject to a change of circumstances, after a careful discussion by the District Court. 222 Fed. Rep. 539.

The value of the railroad property for the years 1910–1913 was admitted. The question in dispute is the usual one of the division of expense and income between state and interstate business. The decision below explains in greater detail than it is necessary to repeat the method of investigation adopted by the Railroad. For the months of November and December, 1913, it caused the most minute and specific reports to be made of all the facts that, by the formulas prepared, would throw light upon the problem to be solved. Such an investigation is too expensive to be kept up for more than a limited time, but evidence was offered to show that the figures for the two months reflected the previous years as to the material proportions, so far as was possible to judge from the returns previously required by the State.

In establishing local rates a State must be assumed to intend to confine its action within the limits set by the Constitution and not to seek an unjust advantage from the difficulties of dividing income and expense to which we have referred, but in this case the appellants have contented themselves with a purely negative attitude. There is made even a preliminary objection that the evidence is hearsay. We have not observed that the objection was taken when the evidence was introduced and if not it would be too late. *Diaz* v. *United States*, 223 U. S. 442, 450. But it is enough to say that the Railroad adopted the only practicable mode of presenting its results, that it exhibited its work-sheets and data to the appellants, that the returns were made by the employees in the course of their business and that if the appellants had desired to question any of the data they could have called for further verification. It seems to us that technical rules are sat-

isfied and that justice plainly requires this objection to be set aside.

We hardly can avoid approaching the discussion of the merits in the light of a few facts indicating that the probabilities are on the Railroad's side. Weight naturally attaches to the opinion of the judge who heard the case. Apart from that, it is not to be forgotten that this same Commission, with others, recognizing the incongruity between the local passenger rates and those in force between different States, applied to the Interstate Commerce Commission to have the latter changed; that the Commission found that the three-cent rate was not shown to be unreasonable and that it dismissed their petition; reminding them that the adjustment properly should come not from the United States but from themselves. *Corporation Commission of Oklahoma* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 31 I. C. C. 532. The average haul in Arkansas is shorter than the average of the road, the density of traffic is less and the maintenance of the road is more expensive. We are aware that there is some contradiction upon this last point but we have no doubt of the fact that the cost is greater in Arkansas than the average cost of the line.

We do not propose to follow the arguments that have been addressed to us into the elaborate tables of figures. We are satisfied in the main with the discussion that they received below and shall refer only to one or two details that seem to need mention, without discussing the merits or demerits of the formulas. We are of opinion that the Railroad has shown successfully the state rates to be confiscatory and that even if some errors are detected they are not enough to change the result. We agree with the District Judge that the two months of investigation afforded a basis for argument as to constant conditions. We agree that it is proved that the local expenses are proportionally very much greater than the interstate.

In fixing the exact rates it may be that mistakes were made. Perhaps the most important doubt is raised by the fact that the Railroad apportioned the cost of maintaining tracks and track structures, so far as not definitely as- signable, between freight and passenger service on the basis of engine ton miles (the weight of the engine in working order multiplied by the distance it moves in the one service or the other). This criterion, although upheld by the court below, is not regarded as certainly the best by the Interstate Commerce Commission. *Western Passenger Fares*, 37 I. C. C. 1, 13. It gave for the test period 51.19 per cent. to freight and 49.31 to passenger, whereas the Commission's figures gave a larger percentage to freight. The result of a difference of eleven per cent. would be to convert the deficit alleged by the Railroad and found by the court below in intrastate returns into a profit of less than 1 per cent. upon the agreed valuation. But the extent of the error, if any, is doubtful, and neither that nor any other possible errors would turn the scale.

The Railroad, after getting the actual returns at the three-cent and two-and-a-half-cent passenger rate and the freight rates allowed by the court, deducted the sums necessary to bring the revenue down to what it would have been had the state rates been followed. It is objected that this does not allow for the increase of travel that would follow the reduction. The Railroad replies and the court below found that the increase is mainly at the expense of interstate revenue when the combined local rates are less than the interstate one. Whether this exhausts the matter or not we are of opinion that upon this record the supposed increase is too conjectural properly to affect our conclusion. The direct effect of the reduction is plain—the remote one is at best a guess.

Light is thrown upon the position of the State by the decision of the Interstate Commerce Commission in *Memphis* v. *Chicago, Rock Island & Pacific Ry. Co.*, 39

I. C. C. 256, 265: "The present unduly low rates within Arkansas are due at least in part to the attempt by the Railroad Commission of Arkansas to protect Arkansas shippers and build up Arkansas jobbing centres." In that case it was intimated that the carriers would be required to remove discriminations resulting from the unduly low rates, as was done in the *Shreveport Case. Houston, East & West Texas Ry. Co.* v. *United States,* 234 U. S. 342. Upon the whole matter we are of opinion that the decree below was right and it is affirmed.

*Decree affirmed.*