**SOUTHWESTERN BELL TELEPHONE CO. v. CITY OF SAN ANTONIO, TEX., et al.**

District Court, W. D. Texas, at San Antonio. Sept. 11, 1933.

For former opinion, see 2 F. Supp. 611.

Nelson Phillips, of Dallas, Tex., John Boyle, E. D. Henry and John H. Bickett, Jr., both of San Antonio, Tex., William H. Duls, of Dallas, Tex., and E. W. Clausen, of St. Louis, Mo., for plaintiff.

Joseph Ryan, City Atty., T. D. Cobbs, Jr., Asst. City Atty., Bruce W. Teagarden, and Carl Wright Johnson, all of San Antonio, Tex., for defendants.

HOLMES, District Judge.

The opinion of the court in this case was filed February 20, 1933. Southwestern Bell Telephone Company v. City of San Antonio et al. (D. C.) 2 F. Supp. 611. In pursuance thereof, March 20, 1933, a final decree was entered sustaining defendants' exceptions to the master's report, setting aside said report, and dismissing the bill. Findings of fact and conclusions of law were incorporated in the decree. A petition to set aside the decree and have a rehearing on the merits was filed by the plaintiff without delay, and application made to the court to consider the same upon briefs and oral argument. Briefs having been filed within the time agreed upon by counsel, the case was reargued orally May 25, 1933, upon the same record originally considered by the court and master. Renewing its former contentions, it was urged in the argument and briefs for the plaintiff that the court had misconceived the findings of the master, and erred in setting aside his report.

The earnestness of this plea, the ability of counsel, and the reputation of the master were sufficient to enlist the attention of the court, but, in addition, the mass of oral and documentary testimony, with its intricate accounting and maze of figures, was ample admonition of the possibility of error. For these reasons I have carefully re-examined the record and briefs.

Subsequent to the filing of my opinion in this case, a decision of the Supreme Court was handed down on May 8, 1933, in the case of Los Angeles Gas & Electric Corporation v. Railroad Commission of the State of California, 289 U. S. 287, 53 S. Ct. 637, 643, 77 L. Ed. 1180, in which it restated with particularity the general principles which should control the courts in confiscatory rate controversies. Its own prior decisions were freely cited to sustain the pronouncements therein made by the court. That they are entirely harmonious with the guiding principles of the court in this case will appear from the following quotation from the opinion of the Chief Justice:

"We have emphasized the distinctive function of the court. We do not sit as a board of revision, but to enforce constitutional rights. San Diego Land & Town Co. v. Jasper, 189 U. S. 439, 446, 23 S. Ct. 571, 47 L. Ed. 892. The legislative discretion implied in the rate-making power necessarily extends to the entire legislative process, embracing the method used in reaching the legislative determination as well as that determination itself. We are not concerned with either, so long as constitutional limitations are not transgressed. When the legislative method is disclosed, it may have a definite bearing upon the validity of the result reached, but the judicial function does not go beyond the decision of the constitutional question. That question is whether the rates as fixed are confiscatory. And upon that question the complainant has the burden of proof, and the court may not interfere with the exercise of the state's authority unless confiscation is clearly established.

"As the property remains in the ownership of the complainant, the question is whether the complainant has been deprived of a fair return for the service rendered to the public in the use of the property. This court has repeatedly held that the basis of calculation is the fair value of the property; that is, that what the complainant is entitled to demand, in order that it may have 'just compensation' is 'a fair return upon the reasonable value of the property at the time it is

being used for the public.' In determining that basis, the criteria at hand for ascertaining market value, or what is called exchange value, are not commonly available. The property is not ordinarily the subject of barter and sale and, when rates themselves are in dispute, earnings produced by rates do not afford a standard for decision. The value of the property, or rate base, must be determined under these inescapable limitations. And mindful of its distinctive function in the enforcement of constitutional rights, the court has refused to be bound by any artificial rule or formula which changed conditions might upset. We have said that the judicial ascertainment of value for the purpose of deciding whether rates are confiscatory 'is not a matter of formulas, but there must be a reasonable judgment, having its basis in a proper consideration of all relevant facts.' Minnesota Rate Cases, 230 U. S. 352, 434, 33 S. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18; Georgia Railway & Power Co. v. Railroad Commission, 262 U. S. 625, 630, 43 S. Ct. 680, 67 L. Ed. 1144; Bluefield Water Works Co. v. Public Service Commission, 262 U. S. 679, 690, 43 S. Ct. 675, 67 L. Ed. 1176.

"The actual cost of the property—the investment the owners have made—is a relevant fact. Smyth v. Ames, 169 U. S. 466, 547, 18 S. Ct. 418, 42 L. Ed. 819. But, while cost must be considered, the Court has held that it is not an exclusive or final test. The public have not underwritten the investment. The property, on any admissible standard of present value, may be worth more or less than it actually cost. The time and circumstances of the outlay, and the effect of altered conditions, demand consideration. Even when cost is revised so as to reflect what may be deemed to have been invested prudently and in good faith, the investment may embrace property no longer used and useful for the public. This is strikingly illustrated in the present case where the company has a large gas manufacturing plant which, in view of the supply of natural gas, has not been used for several years and is not likely to be used for many years to come, if at all. But no one would question that the reasonable cost of an efficient public utility system 'is good evidence of its value at the time of construction.' We have said that 'such actual cost will continue fairly well to measure the amount to be attributed to the physical elements of the property so long as there is no change in the level of applicable prices.' McCardle v. Indianapolis Water Co., 272 U. S. 400, 411, 47 S. Ct. 144, 148, 71 L. Ed. 316. And, when such a change in the price level has occurred, actual experience in the construction and development of the property, especially experience in a recent period, may be an important check upon extravagant estimates.

"This court has further declared that, in order to determine present value, the cost of reproducing the property is a relevant fact which should have appropriate consideration. Southwestern Bell Telephone Co. v. Public Service Commission, 262 U. S. 276, 287, 288, 43 S. Ct. 544, 546, 67 L. Ed. 981, 31 A. L. R. 807; Bluefield Water Works v. Public Service Commission, supra; Standard Oil Co. v. Southern Pacific Co., 268 U. S. 146, 156, 45 S. Ct. 465, 69 L. Ed. 890; McCardle v. Indianapolis Water Co., supra, 272 U. S. 410, 47 S. Ct. 144, 71 L. Ed. 316. In Southwestern Bell Telephone Co. v. Public Service Commission, supra, this court said that 'it is impossible to ascertain what will amount to a fair return upon properties devoted to public service, without giving consideration to the cost of labor, supplies, etc., at the time the investigation is made. An honest and intelligent forecast of probable future values, made upon a view of all the relevant circumstances, is essential. If the highly important element of present costs is wholly disregarded, such a forecast becomes impossible.' See St. Louis & O'Fallon Ry. Co. v. United States, 279 U. S. 461, 485, 49 S. Ct. 384, 73 L. Ed. 798. But, again, the court has not decided that the cost of reproduction furnishes an exclusive test. See Smyth v. Ames, supra; Minnesota Rate Cases, supra; Georgia Railway & Power Co. v. Railroad Commission, supra. We have emphasized the danger in resting conclusions upon estimates of a conjectural character. We said, in Minnesota Rate Cases, supra, 230 U. S. 452, 33 S. Ct. 729, 761, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18: 'The cost-of-reproduction method is of service in ascertaining the present value of the plant, when it is reasonably applied and when the cost of reproducing the property may be ascertained with a proper degree of certainty. But it does not justify the acceptance of results which depend upon mere conjecture. It it fundamental that the judicial power to declare legislative action invalid upon constitutional grounds is to be exercised only in clear cases. The constitutional invalidity must be manifest, and if it rests upon disputed questions of fact, the invalidating facts must be proved. And this is true of asserted value as of other facts.' The weight to be given to actual cost, to historical cost, and to cost of reproduction new, is to be determined in the

light of the facts of the particular case. Mc-Cardle v. Indianapolis Water Co., supra."

Counsel insist that the court laid too heavy a burden upon the plaintiff at the outset of the case by prescribing that the proof of confiscation must be beyond all reasonable doubt. Pertinent authorities of our own and other circuits, as well as of the Supreme Court, are not wanting to sustain the proposition. Also, it is a well-settled general rule of constitutional law that, if there is a reasonable doubt of its validity, legislation may not be declared void by the courts. However, other decisions say, "The rates must be plainly unreasonable * * * and * * * the case must be a clear one before the courts ought to be asked to interfere with state legislation upon the subject." Willcox v. Consolidated Gas Co., 212 U. S. 19, 29 S. Ct. 192, 195, 53 L. Ed. 382, 395, 400, 48 L. R. A. (N. S.) 1134, 15 Ann. Cas. 1034. Again, it is said, the rates must be "plainly and palpably unreasonable." San Diego Land & Town Co. v. National City, 174 U. S. 739, 19 S. Ct. 804, 43 L. Ed. 1154. In another case the court said: "In seeking to override the action of the state upon constitutional grounds it was incumbent upon them to establish the invalidating facts by definite and convincing proof." Allen v. St. Louis, I. M. & S. Railroad Company, 230 U. S. 557, 560, 33 S. Ct. 1030, 1033, 57 L. Ed. 1625. At another time it is said the proof must be "manifest."

Probably the latest utterance of the Supreme Court on the subject is contained in the above quotation from Los Angeles Gas & Electric Corporation v. Railroad Commission of California, 289 U. S. 287, 53 S. Ct. 637, 643, 77 L. Ed. 1180. It is as follows: "When the legislative method is disclosed, it may have a definite bearing upon the validity of the result reached, but the judicial function does not go beyond the decision of the constitutional question. That question is whether the rates as fixed are confiscatory. And upon that question the complainant has the burden of proof, and the Court may not interfere with the exercise of the state's authority unless confiscation is clearly established."

Subsequently, in the same connection, the court quotes from McCardle v. Indianapolis Water Company, 272 U. S. 400, 47 S. Ct. 144, 71 L. Ed. 316, where the language is, "that the judicial power to declare legislative action invalid upon constitutional grounds is to be exercised only in clear cases." It would be hard to distinguish the difference in the weight of proof "beyond a reasonable doubt" and proof which is "clear and convincing,"

or "clear and satisfactory." If, when the evidence is completed, the court entertains a reasonable doubt of the confiscatory nature of the rates, it cannot be said that the proof is clear and convincing; and, if it is not beyond a reasonable doubt, it is not sufficiently convincing and satisfactory to stay the action of a state. In a still later case, though not a rate controversy, South Carolina v. Bailey, 289 U. S. 412, 421, 53 S. Ct. 667, 671, 77 L. Ed. 1292 (May 22, 1933), the court indicated that a showing by clear and satisfactory evidence was synonymous with proof beyond a reasonable doubt. The court said: "Considering the Constitution and statute and the declarations of this Court, we may not properly approve the discharge of the respondent unless it appears from the record that he succeeded in showing by clear and satisfactory evidence that he was outside the limits of South Carolina at the time of the homicide. Stated otherwise, he should not have been released unless it appeared beyond reasonable doubt that he was without the state of South Carolina when the alleged offense was committed and, consequently, could not be a fugitive from her justice."

But, whatever may be the distinction between the phrases, it would make no difference in this case, because the court found that the proof of confiscation was not shown by evidence which was either clear and convincing or satisfactory. In fact, the testimony to the contrary was accepted by the court.

It may be true that in large part I am differing with the master upon the weight and credibility of testimony, and the interpretation thereof. It is undoubtedly true that he saw and heard the living witnesses testify, and enjoyed all the advantages incident to making observations at the hearings. Due allowance has been made for this; his report has been treated as presumptively correct, as provided by Equity Rule 61½ (28 USCA § 723), but that rule also provides that "the court may adopt the same, or may modify or reject the same in whole or in part when the court in the exercise of its judgment is fully satisfied that error has been committed." This conclusion, which has been reached by the court (upheld by the defendants and denied by the plaintiff), can be verified only by a reading of the testimony in extenso.

Much stress is laid upon the fact that the books of the company are kept in a manner prescribed by the Interstate Commerce Commission, but compliance with forms of bookkeeping does not give conclusive verity to entries made upon the books, when, upon

cross-examination, or otherwise, it appears that the entries were not original ones and do not record actual transactions, but estimates, allocations, and prorated items. What I mean is illustrated time and again in the testimony of Mr. Sloan, Mr. Snell, and Mr. Scott.

I am convinced that the plaintiff's local exchange property in San Antonio has not been subjected to confiscation during the years under review, and that no error was committed in dismissing the bill. A decree may be entered accordingly.