## POTOMAC ELECTRIC POWER CO. et al. v. PUBLIC UTILITIES COMMISSION OF DISTRICT OF COLUMBIA et al.

(Court of Appeals of District of Columbia. Submitted May 2, 1921. Decided November 7, 1921.)

No. 3485.

1. **Public service commissions ⟨⟩25—Court exercises independent judgment as to law and facts.**

Though Act Cong. March 4, 1913, creating the Public Utilities Commission of the District, paragraph 69, places the burden of proof upon the party seeking to set aside any determination of the Commission, the court, on bill to set aside the valuation of the Commission made under paragraph 7 of the act, must exercise its own independent judgment as to both law and facts so far as necessary to determine the question in issue, where the decision is challenged on the ground that it is based upon a mistake of law, is wholly unsupported by evidence, or is so clearly contrary to the weight of the evidence as to amount to an arbitrary exercise of power.

2. **Public service commissions ⟨⟩17—Increase in cost due to war should be considered in fixing value.**

In fixing the value of property devoted to public use in 1916, the Commission should consider and give fair weight to the increase in values since 1914, resulting from the World War, and its decision fixing the value on July 1, 1914, adding thereto the actual cost of improvement subsequently made, must be set aside.

3. **Public service commissions ⟨⟩17—Utility entitled to fair return on value at time of use.**

A public utility is entitled to a fair return upon the reasonable value of the property at the time it is being used for the public.

Smyth, Chief Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

Bill by the Potomac Electric Power Company, and cross-bill by the Washington Railway & Electric Company, against the Public Utilities Commission of the District of Columbia and others, to review the findings of the Commission as to the value of the property of the plaintiff actually used for the convenience of the public. From a decree dismissing the bill and the cross-bill, the plaintiff and cross-complainant appealed. Reversed and remanded.

John S. Barbour, of Washington, D. C., Osborne I. Yellott, of Baltimore, Md., and S. Russell Bowen, of Washington, D. C., for appellants.

C. H. Syme and F. H. Stephens, both of Washington, D. C., for appellees.

ROBB, Associate Justice. This is an appeal from a decree in the Supreme Court of the District dismissing the bill of the Potomac Electric Power Company and the cross-bill of the Washington Railway & Electric Company, seeking a review of the findings of the Public Utilities Commission of the District of Columbia as to the value of the property of the Power Company "actually used and useful

---

for the convenience of the public." See act creating the Public Utilities Commission, 37 Stat. 974.

Paragraph 7 of the act provides that—

"The Commission shall value the property of every public utility within the District of Columbia actually used and useful for the convenience of the public at the fair value thereof at the time of said valuation."

And paragraph 9 authorizes the Commission at any time, of its own initiative, to make a revaluation of any public utility.

Under paragraph 64:

Any public utility "being dissatisfied with any order or decision of the Commission fixing any valuation, rate or rates, tolls, charges, schedules, joint rate or rates, or regulation, requirement, act, service or other thing complained of may commence a proceeding in equity in the Supreme Court of the District of Columbia against the Commission as defendants, to vacate, set aside, or modify any such decision or order on the ground that the valuation, rate or rates, tolls, charges, schedules, joint rate or rates, or regulation, requirement, act, service or other thing complained of fixed in such order is unlawful, inadequate, or unreasonable."

It is further provided that all such proceedings "shall be tried and determined as are equity proceedings in said court."

Paragraph 69 places the burden of proof upon the party adverse to the Commission or seeking to set aside any determination, requirement, or order of the Commission, "to show by clear and satisfactory evidence" that the order or finding is "inadequate, unreasonable, or unlawful."

[1] Under our view of the case it is necessary to consider but two questions at this time, the first of which is as to the scope of the court's jurisdiction under the statute. Ohio Valley Co. v. Ben Avon Borough, 253 U. S. 287, 40 Sup. Ct. 527, 64 L. Ed. 908, involved a statute of Pennsylvania substantially similar to ours. There the Commission had found the fair value of the public utility and the trial court reviewed and reversed the finding and directed the Commissioner to fix the value at a substantially higher sum. The Supreme Court of the state reversed the decision of the trial court on the ground, as found by the Supreme Court of the United States, that the courts were without authority "to determine the question of confiscation according to their own independent judgment." In the Supreme Court of the United States it was said:

"The order here involved prescribed a complete schedule of maximum future rates and was legislative in character. [Authorities.] In all such cases, if the owner claims confiscation of his property will result, the state must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause, Fourteenth Amendment."

The statute here under examination gives to the findings of the Commission prima facie effect, for it in terms places the burden upon the challenger or exceptant of showing by clear and satisfactory evidence that the findings are "inadequate, unreasonable, or unlawful." But where, as here, the decision is challenged on the ground that it is

based upon a mistake of law, or that it is wholly unsupported by evidence, or is so clearly contrary to the weight of the evidence as to amount to an arbitrary exercise of power, it is the duty of the court, under the rule announced by the Supreme Court, to exercise "its own independent judgment as to both law and facts," so far as it is necessary to determine the question in issue. The court's duty in such a situation is very carefully outlined in Int. Comm. v. Union Pac. R., 222 U. S. 541, 547, 32 Sup. Ct. 108, 56 L. Ed. 308.

[2] The second question relates to alleged errors in the rule adopted by the Commission in finding present value. The Commission found the fair value of the property, as of July 1, 1914, to be $10,250,000. The uncontradicted evidence showed that between that date and December 31, 1916, "the time of said valuation," there had been a sharp rise in values. On this point the Commission said:

"The European war did not commence until August, 1914. Its effect was first a depression of short duration, since which prices have advanced under this artificial stimulus with such rapidity and to such an extent as to prevent the formation of reliable opinion as to their permanency or future effect upon the industrial and economic situation in this country."

Appellants contend that the Commission as matter of law, in reaching a conclusion as to the fair value of their property on December 31, 1916, should have taken into consideration the increased value of that property, as shown by the evidence, between the earlier and later dates. This the Commission declined to do, but, taking for a basis the fair value of the property as of July 1, 1914, the Commission added the net additional expenditures on the property subsequent to that date, and entirely ignored the evidence as to the increase in the value of the property forming the basis of the valuation of July 1, 1914. In its decision the Commission said:

"Claims by the company for greater allowances in the reproduction estimate of the physical property were based largely upon the difference in prices created by extraordinary conditions which arose subsequent to July 1, 1914."

The trial court was of the view that the rule adopted by the Commission was correct. We are unable to concur in that view.

[3] The principal object of valuation, of course, is to provide a rate base, and the statute clearly contemplates that the commission shall ascertain the value as of "the time of said valuation," and not as of some anterior date. It has been ruled many times that there must be a fair return to a public utility "upon the reasonable value of the property at the time it is being used for the public." San Diego Land & Town Co. v. National City, 174 U. S. 739, 757, 19 Sup. Ct. 804, 43 L. Ed. 1154; Minnesota Rate Cases, 230 U. S. 352, 434, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18. In the present case the Commission, in effect, declined to find the present value of the property because not satisfied as to how long existing conditions would continue. In assuming this position the Commission must have overlooked paragraph 9 of the statute, authorizing it at any time, of its own initiative, to make a revaluation of the property

of any public utility. In our view, it was the duty of the Commission to have considered and given due weight to the evidence as to the then value of the property. As conditions changed and values were substantially affected, it would have been the further duty of the Commission to exercise its discretion and revalue the property. The conditions existing were world wide and, while their duration and future effect were problematical, there was no immediate prospect of a return to normal conditions. It may be suggested, although the point was not raised in the opinion of the Commission, that practical difficulties would have been encountered in an attempt to ascertain the increase in value of the property between July 1, 1914, and December 31, 1916. But there was substantial evidence before the Commission as to the rise in values, and a brief investigation would have enabled the Commission to determine, with substantial accuracy, how much in fairness should be added to the earlier valuation.

Much reliance was placed by the trial court upon the language of former Justice Hughes, as referee, in the case of Brooklyn Borough Gas Co. v. Public Service Commission (July 24, 1918) ; but we find nothing in the report, as we read it, justifying the action of the Commission here in entirely ignoring the evidence as to value at the time the finding actually was made. The contention there was that the rates should be based "upon a plant valuation simply representing a hypothetical cost of reproduction" at a time of abnormally high prices due to exceptional conditions. There is a very substantial difference between considering the present cost of reproduction as one of the essential and important elements in the determination of present value, and the acceptance, as conclusive evidence of such value, of mere expert estimates of present cost of reproduction.

We are of the view, therefore, that the present cost of reproduction is one of the necessary elements for consideration, along with other relevant facts, in fixing the fair and reasonable value of the property. The law deals with existing conditions and not with abstract theories.

It follows that the decree must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

SMYTH, Chief Justice (dissenting). The court does not disapprove the findings of the Commission with respect to the value of the property on July 1, 1914, but holds in effect that since there was substantial testimony that the cost of reproduction had greatly increased between that date and December 31, 1916, the fair value of the property must also have increased, and therefore that the Commission erred in not giving effect to that increase. And it imposes on the Commission the duty of saying "how much in fairness should be added to the earlier [1914] valuation." But the Commission have already decided that nothing in fairness should be added—that the abnormal increase in the cost of reproduction caused by the World War was not an index of fair value. The Commission's notion of fairness upon the point is known now, for we cannot assume that it has changed, and

hence a direction to them to do what is fair in the premises is equiva-
lent to saying that they should adhere to their former judgment. For
this reason I think that there should be a definite instruction given as
to whether the whole amount of this increase, or only a part, and if
a part, what part, should be added. Suppose the Commission allow
10 per cent. of the increase, will the court approve their action or send
the case back for retrial? To my mind the Commission are entitled
to know just what the court's view is on the question.

But I do not think any part of the increase should be included, be-
cause, in my judgment, it has no tendency to indicate the fair value
of the property. The increase is not due to any investment by the
company, but results solely from the World War, which has demoraliz-
ed market conditions and rendered property values unreliable. To ac-
cept such an increase as a standard of value would be to adopt an un-
stable measure, which would lead to injustice. "Prices advanced un-
der the artificial stimulus of the European war," said the Commission,
"with such rapidity and to such an extent as to prevent the formation
of a reliable opinion as to their permanency or future effect upon the
industrial and economic situation in this country." It was on prices
thus advanced that the company based its reproduction cost, for its
chief expert said:

"The prices adopted were those which, we believe, a competent contractor if
asked to bid on the construction of such a property on July 1, 1916, would use
in making his estimate of cost."

At that time the World War was at its height. Such a contractor
would have to consider the great uncertainties attending the procure-
ment of labor and material and the fluctuations in the cost of both, and
to be safe would have to fix his prices enormously high. Could there
be a more oscillating or unfair standard found? The Commission
were right when they said:

"Under what principle of law or equity may purely speculative-cost incre-
ments be created and added under the very eyes of the Commission and dur-
ing the very time of its investigations to find fair value?"

Mr. Justice Gould, who reviewed the case in the Supreme Court,
said reproduction cost could be used where it "is determined as of a
fairly normal period," but—

"It would lose all value if made as of an abnormal period when prices
were abnormally low or high. To be of any assistance or real use it must be
made as of a normal time and the unit cost applied thereto should extend over
a sufficient number of years to show a normal trend of prices."

In harmony with this is the language of Judge Hughes as referee in
the case of Brooklyn Borough Gas Company v. Public Service Com-
mission, decided July 24, 1918. He wrote the opinion of the Supreme
Court in the Minnesota Rate Cases, and may be regarded as an expert
on the question. "To base," he said, "rates upon a plant valuation
simply representing the hypothetical cost of reproduction at a time of
abnormally high prices due to exceptional conditions would be mani-
festly unfair to the public, and likewise to base rates upon an estimated

cost of reproduction far lower than the actual bona fide and prudent investment because of abnormally low prices, would be unfair to the company"; and condemned the contention that the cost of reproduction should be used as a standard, by saying:

"This would result in allowing a public service corporation to take advantage of a public calamity by increasing its rates above what would be a liberal return not only on actual investment, but upon a normal reproduction cost, in the view that unless it could make an essentially exorbitant demand upon the public it would be deprived of its property without due process of law."

True, he was speaking there of the insistence that the cost of reproduction should be used as the sole test of value, but his argument would forbid the inclusion of any part of it. The point he was considering cannot be distinguished in principle from the one in the instant case.

The New York Public Service Commission, First District, No. 5, P. U. R. 930 denying the proposition that reproduction cost should be used, said:

"In the present juncture of universal upheaval, the application of such a postulate of evaluation to rate-making would lead to startling consequences."

"The cost of reproduction method," says the Supreme Court of the United States in the Minnesota Rate Cases, 230 U. S. 352, 452, 33 Sup. Ct. 729, 761 (57 L. Ed. 1511, 48 L. R. A. [N. S.] 1151, Ann. Cas. 1916A, 18), "is of service in ascertaining the present value of the plant, when it is reasonably applied and when the cost of reproducing the property may be ascertained with a proper degree of certainty. But it does not justify the acceptance of results which depend upon mere conjecture."

If, instead of the cost of reproduction being inflated, it was abnormally low as in the time of a panic, would it not be held unfair to value the company's property by such a standard? In the leading case of Smyth v. Ames, 169 U. S. 466, 547, 18 Sup. Ct. 418, 42 L. Ed. 819, the value of the Union Pacific Railroad was under consideration for the purpose of fixing a rate base. The road was constructed a few years after the close of the Civil War when prices were abnormally high. The testimony in the case was taken in the wake of the panic of 1893 when the road could have been reproduced for about one-third of what it had cost. To take the cost of reproduction as the standard of value would be very unjust and the Supreme Court refused to do it, but it said that it should be considered with certain other factors named, without indicating what weight should be given to it or any of the others. The inference is that the triers of fact are to examine all these factors, allowing to each such effect, if any, as in fairness it should have in forming their appraisal of the value. The Commission here considered the reproduction cost and rejected it because of its abnormality.

The rate base to be fixed was not to be for a month or a year, but for a number of years, for it is not believed that it was the intention of Congress that, in view of the trouble and expense attending it, a valua-

tion should be made very often. If effect was given to the high reproduction cost prevailing in 1916, the patrons of the utility would be compelled to pay a rate which would afford a just return on the value fixed. This would be extremely unfair. It is said that if the cost of reproduction should drop, the Commission are empowered by the statute to revalue the property. True, but if the company issued stocks and bonds based on the value placed on its property by the Commission, we would have the same situation as existed in the Consolidated Gas Co. Case, 212 U. S. 19, 43, 29 Sup. Ct. 192, 53 L. Ed. 382, 15 Ann. Cas. 1034. There a number of gas companies were authorized by the Legislature to consolidate, and the consolidated company was empowered to issue stock "not to be in amount more 'than the fair aggregate value of the property, franchises and rights of the several companies to be consolidated.'" The franchise was valued at seven millions of dollars. Stock was sold on the basis of the valuation. Many years afterwards it was sought to fix the value of the consolidated property as a rate base. It was urged that no allowance should be made for the franchise, but the court said that as it was valued by direction of the Legislature and stock purchased on the assumption that it was worth $7,000,000, the stockholders were entitled to receive a fair return upon it. Applying that doctrine to this case, would not the stockholders who purchased stock on the theory that the high value fixed by the Commission was the true value be in a strong position to say that they were entitled to a fair return on that value and that it could not be reduced if by doing so they were deprived of such a return?

The value placed on the property by the Commission finds strong support in the following facts: The Commission allowed $1,322,936.28 more than the amount found by their accountants as the historical cost of the property undepreciated; $1,037,486.91 more than their own finding of the same item of value; $1,137,157.09 more than the cost of reproduction in 1914, less accrued depreciation as found by their engineers; and $761,737.23 more than their own finding of the same element of value. They found the fair value of the property on July 1, 1914, to be $10,250,000, to which they added $761,737.23, the actual cost of additions made between July 1, 1914, and December 31, 1916, and fixed the value as of the later date at $11,231,178.43. The company claimed the fair value to be on December 31, 1916, $23,235,387. Compare this claim with what it said the property was worth in its reports to Congress before the investigation was entered upon. There is a report for each year running from 1906 to 1916. In the first the approximate value was placed at $8,500,000; in the one for 1912, at $13,000,000. These amounts improperly include the value of the Great Falls Power site, which is not being used for the benefit of the public, at $1,000,000, and $1,977,150.63, a book value, without any substantial basis, given to the property which the company acquired from the United States Electric Lighting Company. When these amounts are deducted from the figures of the 1912 report, a balance will be left of $10,022,850, which is $227,150 less than the July 1, 1914, value as fixed by the Commission.

After 1912 the reports did not contain a statement of the approximate value of the property, but did give its actual cost. The one for 1914 said it cost $11,655,070.30; the one for 1916, $12,510,344.10. Deduct from the last figures the two items which I have just said were improperly included in the 1912 statement, and which were included in these figures, and the balance would be $9,533,194 as the cost of the company's property according to its own statement made in 1916, the time when the decision of the Commission was rendered; or $1,697,-984.00 less than the Commission allowed.

In view of the foregoing, I do not think the company has, in the language of the statute, clearly and satisfactorily shown that the finding of the Commission is inadequate, unreasonable, and unlawful, and hence I dissent.