ELIZABETHTOWN GAS LIGHT COMPANY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS ET AL., RESPONDENTS.

Argued July 27, 1920—Decided August 7, 1920.

1. The use by the board of public utility commissioners for rate-making purposes, of the average prices prevailing for the five years preceding January 1st, 1916, as a standard of value on July 1st, 1919, was not justified in view of the higher prices then prevailing.

2. An order of the board of public utility commissioners may be set aside where it clearly appears that there was no evidence before the board to support, reasonably, the same.

On *certiorari.*

Before Mr. Justice SWAYZE.

For the prosecutors, the gas light companies, *George S. Hobart, Clement K. Corbin* and *William M. Wherry, Jr.*

For the public utility commission, *L. Edward Herrmann.*

For the municipalities, *Joseph T. Hague, Frederick M. P. Pearse, Wesley Benner* and *Harold Depew.*

The opinion of the court was delivered by

SWAYZE, J.   There are writs on behalf of the gas companies in this case, and in other cases where different municipalities are concerned, and there are writs on behalf of some of the municipalities. The cases were all argued together, and in the view I take can be considered together. The gas light companies complain because the public utility commissioners did not allow them as large an increase in the rate for gas as they think just. The municipalities complain because they think the amount allowed too high. All that I need consider are the objections raised by the gas light companies. The

general principles are settled by what was said in *Public Ser-vice Gas Co.* v. *Public Utility Board,* 84 *N. J. L.* 463; affirmed on opinion, 87 *Id.* 597, and *O'Brien* v. *Public Utility Board,* 92 *Id.* 44. The only question that need be dealt with in the present case is the application of those principles to the facts. The companies claim that there was an under-valuation of their property—*first,* because the commissioners adopted as the standard of value the average prices prevailing for five years preceding January 1st, 1916; *second,* because they disregarded the only evidence as to going concern value and adopted an arbitrary sum not sustained by any evidence at all, and *third,* because they arbitrarily omitted what is called the overhead valuation on land owned by the com-panies, being, as I understand it, the cost of acquiring and assembling the land employed by the companies for the manu-facture of gas.

I think it entirely clear that the failure to allow for prices at the time to which the rates apply, July 1st, 1919, was an error. It is not denied that prices were very much higher in 1919 and are very much higher now than the average for the years 1911 to 1916. So notorious is this that the Supreme Court of the United States has referred to it in an opinion as a matter of common knowledge. *Lincoln Gas Co.* v. *Lincoln,* 250 *U. S.* 256 (at *p.* 268). In that case, on its own respon-sibility, the court suggested that in its opinion the decree ought to be modified to permit the complainant to make another application to the courts for relief. It would be manifestly unjust to apply to a gas company a standard of value different from that applied to others. To what extent the increase in prices may be due to an inflation of the cur-rency, or to any particular cause, we do not know. What we do know is that the dollar of 1919 and the dollar of 1920 is worth less than the dollar of 1916, and still less compared with the dollar of the average year from 1911 to 1916. If it were proposed to value the property of the gas company in one hundred cent dollars and allow them a return only on that while other values were on the basis of fifty cent dollars and just double in number, everyone would see the injustice;

so far as the increase in prices is due to inflation of the currency, the illustration is a perfect one. There is another consideration which has also worked against the gas light company. In the year 1919 the rate of interest had increased so that on securities of undoubted value, such as United States government bonds, the rate of interest, instead of being three per cent., or, perhaps, less, had gone up to the neighborhood of six per cent. Obviously, in such a situation an eight per cent. return in an active business in which the risks and hazards had been increased, was much less than a rate of eight per cent. in 1913, when the Passaic case was decided. No allowance seems to have been made for this increase in the rate of interest. It is attempted to justify the scaling down of valuation and return to the gas company, upon the theory that its invested capital was small, but the par value of the stock and the par value of the outstanding bonds by no means measures the investment in a plant that has been built up through sixty years of successful management by reinvesting in the property much of the income and thus increasing the capacity of the prosecutors to render the public service which they were incorporated to render. This suffices to show that the amount of return allowed to the companies would probably be insufficient under present circumstances to attract capital to the business, and this was one of the important tests of the justice and reasonableness of the rate as decided in the Passaic case.

I am inclined to think that the amount allowed by the public utility commission for the value of the plant as a going concern may suffice, but I do not find that there was any evidence in the case to justify the figure, and, under section 38 as amended (*Pamph. L.* 1918, *p.* 304), the order may be set aside where it clearly appears that there was no evidence before the board to support, reasonably, the same. This makes it necessary that there should be evidence to justify the finding, and that I do not find. It is, of course, a very difficult matter to determine the value as a going concern of a business property, and I see nothing to require me to decide now

that the amount claimed by the companies for this value is conclusively established by the evidence.

The companies also claim that they should be allowed for overhead expenses $19,000 for securing the land and getting it together. I think they should be allowed the expenses to which they can prove they have been put for this service provided they are not unreasonable. I am not now prepared to say that the amount should be fixed at $19,000.

The companies were allowed an increase in rates which I think inadequate. If, however, I set aside the order the old rates would be restored and this would work the very injustice that these proceedings are intended to correct. I see no reason, however, why I may not render a judgment sustaining the present order as far as it goes and remanding the case to the commission for rehearing to determine how much additional should be allowed. That will be the judgment. The prosecutors are entitled to costs.