## ST. JOSEPH RY., LIGHT, HEAT & POWER CO. v. PUBLIC SERVICE COMMISSION OF STATE OF MISSOURI et al.

(District Court, W. D. Missouri, C. D.   November 10, 1920.)

### No. 14.

1. **Public service commissions** ⚖⟳22—**Federal court cannot fix rate in suit attacking rates established by state commission.**

   In a suit in the federal court attacking as confiscatory rates of a public utility fixed by a state commission, the court has no rate-making power, but is limited to an adjudication of the reasonableness or unreasonableness of the rate ordered.

2. **Public service commissions** ⚖⟳17—**Valuation of property on prewar costs is erroneous.**

   A valuation by a state public service commission of a public utility's investment, based on the original cost where that was ascertainable, and otherwise upon prices during the prewar period, is not a reasonable method of fixing the valuation in view of the greatly increased costs since the war and of the greater rate of returns earned by other enterprises.

In Equity.   Suit by the St. Joseph Railway, Light, Heat & Power Company against the Public Service Commission of the State of Missouri and others to enjoin the enforcement of a rate prescribed by the commission.   On final hearing.   Injunction granted.

Robert A. Brown, of St. Joseph, Mo., for complainant.

Richard Perry Spencer, James D. Lindsay and Frank W. McAllister, all of Jefferson City, Mo., J. T. Gose, of Shelbina, Mo., and L. V. Stigall, of St. Joseph, Mo., for respondents.

VAN VALKENBURGH, District Judge.   Complainant owns and operates an electric street railway, light, and power plant, and in connection therewith a steam heating plant, in the city of St. Joseph, Mo. In the summer of 1919 complainant filed with the Public Service Commission in the State of Missouri its application for an order allowing it to charge a straight eight cents street car fare in lieu of a five cents fare then charged and collected by it.   It also asked permission to charge increased rates for steam heat.   No increase in light or power rates was asked.   On October 1, 1919, the commission heard evidence in support of this application.   A further hearing was held on the 10th day of October, 1919.   The matter having been submitted to the commission upon the evidence heard and upon the briefs of counsel, the commission on the 20th day of November, 1919, made its report and order allowing the complainant a maximum cash fare of seven cents, with ticket fares of two for thirteen cents, and for passengers between five and twelve years of age a cash fare of four cents, or ticket fares of eight for twenty-six cents.   The commission refused to allow any increase in complainant's steam heating rates.

The applicant is a Missouri corporation, organized in November, 1895, and at the present time has an authorized capital stock of $6,000,000, consisting of $2,500,000 preferred and $3,500,000 common

stock. .It has a funded debt comprising first mortgage bonds, first and refunding bonds, and car trust certificates, aggregating $5,805,000.

The commission's engineers and accountants valued complainant's property as a whole at $5,784,883.07; its railway department at $3,-388,436.58, its light and power department at $1,786,814.25, its Savannah Interurban property at $333,250.32, and its steam heating department at $276,360. Substantially adopting these figures, the commission in its report and order fixed the value of complainant's property as a whole for rate-making purposes at the sum of $5,800,000, its railway department at the sum of $3,395,000, and its steam heating department at $197,500. Upon this valuation the commission said in its report:

"Table No. 6 shows that the property as a whole earned an amount during the year ended June 30, 1919, equivalent to 2.67 per cent. on $5,800,000 for return, surplus and contingencies.

"It is estimated that under the increase in street railway fares granted herein, that the property as a whole will earn an amount equivalent to 5.4 per cent. on $5,800,000 for return, surplus and contingencies. We are confident that this return can be increased through increased operating efficiency of the generating plant, and by the increased use of one-man cars."

It may be stated in passing that a return of 5.4 per cent., which must provide also for surplus and contingencies, has not been regarded by courts and commissions generally as a reasonable return for a public utility, and still less so now under existing conditions. The commission apparently looks for some indefinite increase of this percentage through changed methods of operation suggested by the commission. This is, of course, entirely speculative, and the principle falls nearly, if not quite, within the disapproval of the Supreme Court and of this court as constituting an invasion of the right of the company to conduct and manage its own affairs subject to a proper exercise of the power of regulation. Kansas City, C. C. & St. J. Ry. Co. v. Barker (D. C.) 242 Fed. 310, and cases cited. The engineers and accountants for complainant, as shown by the record, valued complainant's property as a whole at $11,521,639; the railway department at $7,195,333, the Savannah Interurban property at $588,392, the light and power department at $3,228,362, and the steam heating department at $509,-552. We thus find a difference in total valuation between $11,521,639 tendered by complainant and $5,800,000 adopted by the commission for rate-making purposes, or $5,721,639. Complainant's figures are arrived at upon the basis of present day reproduction cost without allowance for depreciation. The commission took the original cost when obtainable, and, when not obtainable, average prices for a fixed period of five years before war prices prevailed, going back approximately to the year 1910. It also allowed cost price for additions and betterments made since present prices have prevailed, but it appears that no improvements or betterments of consequence have been made since that time. It will be observed that the valuation fixed by the commission barely exceeds complainant's funded debt; so that the return expected by the commission to be earned by complainant at 5.4

per cent., if realized, would substantially cover only the interest upon such indebtedness.

There was no substantial difference of opinion between complainant's engineers and accountants and the engineers and accountants for the commission except as to the method of valuation and as to the question of what would constitute a reasonable return upon any given valuation. It was conceded at the argument that complainant's figures were correct upon their theory, and that the commission's figures were substantially correct upon the theory upon which they proceeded; therefore, while complainant's valuation may be too high, because no allowance is made for depreciation and elements of reduction uniformly recognized, nevertheless there must remain a very large amount of valuation to which complainant would be entitled unless the standard adopted by the commission is the correct one, which would have a decisive effect upon the reasonableness of the return possible from the rates allowed by the commission.

[1] It seems unnecessary to consider any phase of this case except that of valuation, because, in my judgment, that consideration is conclusive upon the reasonableness of the present rates. Complainant, in its bill, charges that the same are inadequate, unreasonable, and confiscatory, and prays injunctive relief against their enforcement. Of course, the power of this court is limited to an adjudication upon this point; it being invested with no rate-making power.

[2] It is my judgment that the great weight of authority is against the adoption of a standard of original cost as a controlling basis for determining present value. The present fair value is the object to be attained. Nor do I think it permissible substantially to restrict the inquiry to a period antedating present cost prices. In Joplin & Pittsburg Railway Co. v. Public Service Commission of Missouri et al., 267 Fed. 584, in this same division of this court, before Stone, Circuit Judge, Wade, District Judge, and the writer of this opinion, we said:

"It appears upon the face of the report [of the commission] that great, if not undue, emphasis was laid upon the original cost of the property * * * at a period greatly antedating that with which this investigation must deal; nor can we say that the present period of high prices is so temporary or abnormal that it may practically be disregarded in arriving at the value of complainant's properties. No one can say what degree of depression may ultimately come, but it is reasonably certain that the cost of the properties now under consideration will never again approximate figures prevailing in the years before the World War."

The Supreme Court of New Jersey in an opinion filed August 7, 1920, in the case of Elizabethtown Gaslight Company v. Board of Public Utility Commissioners, 111 Atl. 729, still further elaborates this view, citing Lincoln Gas Co. v. Lincoln, 250 U. S. 256, 39 Sup. Ct. 454, 63 L. Ed. 968, in support of its conclusions. It is there said:

"To what extent the increase in prices may be due to an inflation of the currency or to any particular cause we do not know. What we do know is that the dollar of 1919 and the dollar of 1920 is worth less than the dollar of 1916 and still less compared with the dollar of the average year from 1911 to 1916."

The complainant in this case has to pay wages and buy materials at present advances. In such case, a percentage of return in an active business in which the risks, hazard, and cost of operation had been increased is much less than the same percentage in previous years. In Lincoln Gas Co. v. Lincoln, supra, it is said:

"The court notices judicially that, principally owing to the war, costs of labor and supplies have advanced greatly since the ordinance was adopted, and largely since the case was last heard in the court below, and that annual returns upon capital and enterprise the world over have materially increased, so that what would have been a proper return for capital in gas plants and other public utilities a few years ago furnishes no safe criterion for the present or the future."

In the very recent case of United States ex rel. Kansas City Southern Railroad Co. v. Interstate Commerce Commission, 252 U. S. 178, 40 Sup. Ct. 187, 64 L. Ed. 517, decided by the Supreme Court March 6, 1920, it appears that Congress has given legislative recognition to this same principle, and the court ordered the commission to make its valuation in compliance with the act of Congress. While the decision in that case was predicated upon the express provisions of the act, nevertheless we find in it a recognition, both by Congress and by that court, of the necessity of adapting the standard of rate-making bodies to conditions existing at the time the power is to be exercised.

It follows that the method of valuation adopted by the commission in the case at bar was wrong, and that the resulting computation necessarily reduced the total valuation of complainant's property so substantially as to make the rates based thereon inadequate and practically confiscatory. For this reason, it will be unnecessary to resolve other questions presented by the briefs. By common consent this was deemed the crucial question. The court does not undertake to lay down any hard and fast rule in the premises. Many elements must enter into the final determination of a question of this nature. It is sufficient that the procedure disclosed by this record leads unavoidably to the conclusion that the relief prayed must be granted.

It is so ordered.