# GEORGIA RAILWAY & POWER COMPANY ET AL. *v.* RAILROAD COMMISSION OF THE STATE OF GEORGIA ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF GEORGIA.

No. 298. Argued November 29, 1922.—Decided June 11, 1923.

1. In valuing the physical properties of a public utility corporation as a basis for fixing rates, the present cost of reproduction, less depreciation, is an important element, but not the only element, to be considered. P. 629. *Southwestern Bell Telephone Co.* v. *Public Service Commission, ante,* 276, distinguished.
2. The value of a gas company's property for rate-making purposes, does not include the worth of its franchise to use the city streets, amounting to a perpetual permit but not to a monopoly. P. 632.
3. Nor may past losses, due to insufficiency of previous rates, be capitalized as part of the property on which the fair return is to be based. *Id.*
4. In such inquiries, the federal corporate income tax is to be treated as an operating charge, to be deducted in arriving at the probable net income. P. 633.
5. Taking into consideration the exemption of dividends from the normal federal income tax payable by stockholders, a rate fixed for a gas company which allows it a return of 7¼%, *held,* not confiscatory. *Id.*
6. A decree refusing an interlocutory injunction against enforcement of a rate challenged by a public utility corporation as confiscatory, should be affirmed in the absence of any error by the court below other than possible error in prophecy or of judgment in passing upon the evidence, and when the evidence does not compel a conviction that the rate will prove inadequate. P. 634.

278 Fed. 242, affirmed.

APPEAL from a decree of the District Court refusing an interlocutory injunction in a suit to enjoin enforcement of a gas rate fixed by the appellee Commission.

*Mr. L. Z. Rosser* and *Mr. Robert G. Dodge,* with whom *Mr. Jack J. Spalding, Mr. Walter T. Colquitt, Mr. J.*

*Prince Webster* and *Mr. Linton C. Hopkins* were on the briefs, for appellants.

In rate cases the value of the property is to be determined as of the time of the inquiry. *Houston* v. *Southwestern Bell Tel. Co.*, 259 U. S. 318; *Galveston Electric Co.* v. *Galveston*, 258 U. S. 388; *Lincoln Gas Co.* v. *Lincoln*, 223 U. S. 349.

Cost is not the test. If the value of the property at the time of the inquiry is less than its cost, the Company cannot complain that the rate does not yield an adequate return upon the cost of the property. *San Diego Land Co.* v. *National City*, 174 U. S. 739; *San Diego Land Co.* v. *Jasper*, 189 U. S. 439; *Stanislaus County* v. *San Joaquin Co.*, 192 U. S. 201.

If, on the other hand, the value of the property has appreciated, a rate which yields a reasonable return on the cost is nevertheless confiscatory if it does not produce a fair return upon the present value. *San Diego Land Co.* v. *Jasper, supra; Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19; *Minnesota Rate Cases*, 230 U. S. 352; *Houston* v. *Southwestern Bell Tel. Co.*, 259 U. S. 318.

Reproduction cost, less depreciation, furnishes the approved measure of valuation. *Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1; *Des Moines Gas Co.* v. *Des Moines*, 238 U. S. 153; *Denver* v. *Denver Union Water Co.*, 246 U. S. 178; *Consolidated Gas Co.* v. *Newton*, 267 Fed. 231; 258 U. S. 165.

The method of taking pre-war costs, plus the cost of later additions, is improper. *St. Joseph Ry. Co.* v. *Public Service Comm.*, 268 Fed. 267; *Landon* v. *Court of Industrial Relations*, 269 Fed. 433; *Potomac Electric Power Co.* v. *Public Utilities Comm.*, 276 Fed. 327; *Public Service Ry. Co.* v. *Board of Public Utilities Commrs.*, 276 Fed. 979; *Petersburg Gas Co.* v. *Petersburg*, 132 Va. 82.

In the case at bar the Commission held, in effect, that increased reproduction cost due to conditions incident to

so abnormal an event as the World War is an exception to the general rule and cannot be taken into account. It is, of course, true that rates are established with some idea of permanency and that, if the value of the property at the moment a rate is established is inflated from some transitory cause, the rate is not necessarily confiscatory because it does not yield a full return on this inflated valuation. This Court cannot, however, fail to take notice of the fact that the price level of the latter part of 1921, considerably lower as it was than the prevailing level of the preceding two or three years, was vastly higher than any pre-war level and seems to have become stabilized to a very considerable degree since 1921. *Joplin Ry. Co.* v. *Public Service Comm.;* 267 Fed. 584; *Lincoln Gas Co.* v. *Lincoln,* 250 U. S. 256.

To value gas property in 1921 in the dollars of 1914 is palpably unjust and improper. *Elizabethtown Gas Co.* v. *Public Utility Commrs.,* 95 N. J. L. 18.

The mistake in valuing the physical property was reflected in the estimate of going concern value and the amount allowed for annual depreciation.

The allowance for working capital was figured on an improper basis and is wholly inadequate.

Without reference to further errors of the Commission the new rate is shown to be confiscatory.

The value of the franchise should have been included in the valuation. *Atlanta* v. *Gas Light Co.,* 71 Ga. 106; *West River Bridge Co.* v. *Dix,* 6 How. 507; *Monongahela Navigation Co.* v. *United States,* 148 U. S. 312; *Louisville* v. *Cumberland Tel. Co.,* 224 U. S. 661; *New York Electric Lines* v. *Empire City Subway,* 235 U. S. 179; *Owensboro* v. *Cumberland Tel. Co.,* 230 U. S. 58.

In the legislation of Georgia, franchises of this character are fully recognized as property.

There seems to be no logical reason why the value of franchises should not be included in a valuation for rate

purposes; and indeed it has been several times decided that they are properly to be included. *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19; *Spring Valley Waterworks Co.* v. *San Francisco*, 124 Fed. 574; *Joaquin & Kings River Co.* v. *Stanislaus County*, 191 Fed. 875; *Louisville & Nashville R. R. Co.* v. *Railroad Commission*, 196 Fed. 800. *Galveston Electric Co.* v. *Galveston*, 258 U. S. 388, distinguished.

Past losses should have been taken into consideration.

The court below improperly disallowed the federal income tax as a deduction from gross income.

Upon the evidence the court should have issued the injunction prayed for notwithstanding that there had been no actual trial of the rate.

*Mr. E. J. Reagan* for appellees.

*Mr. Wm. Chamberlain,* by leave of court, filed a brief as *amicus curiæ.*

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The gas supply of Atlanta is furnished by the Georgia Railway & Power Company. Authority to fix public utility rates is vested by law in the Railroad Commission. On September 20, 1921, the Commission called upon the Georgia Company to show cause why the then maximum rate, $1.65 per 1000 cubic feet, should not be reduced; and hearings were duly had. The company insisted that under the proposed rate the net income would be less than 3 per cent. on what it claimed to be the fair value of the property. The Commission concluded that the net income under the proposed rate would be about 8 per cent. on the value found by it. This difference in their views as to the percentage of probable return arose mainly from their difference as to the value of the property. The

company claimed that it was at least $9,500,000. The Commission found that it was $5,250,000. On December 30, 1921, it ordered that the price of gas be reduced to $1.55.

The Georgia Company and the Atlanta Gas Light Company, its lessor, then brought, in the federal court for the Northern District of Georgia, this suit to enjoin enforcement of the order, claiming that the rate prescribed is confiscatory. The case was heard upon application for an interlocutory injunction by three judges under § 266 of the Judicial Code. The court did not approve in all respects the views expressed by the Commission; but it found that " even were there considerable error in fixing values by the Commission, the rate would not appear to be clearly confiscatory " and that enforcement of the order ought not be enjoined until the reduced rate had been tried. It, therefore, refused the interlocutory injunction; and the case is here on appeal under § 238 of the Judicial Code.

*First.* The objections mainly urged relate to the rate-base; and one of them is of fundamental importance. The companies assert that the rule to be applied in valuing the physical property of a utility is reproduction cost at the time of the enquiry less depreciation. The 1921 construction costs were about 70 per cent. higher than those of 1914, and earlier dates when most of the plant was installed. So much of it as was in existence January 1, 1914, was valued at an amount which was substantially its actual cost or its reproduction cost as of that date. The companies claim that it should have been valued at its replacement cost in November, 1921—the time of the rate enquiry; and that the great increase in construction costs was ignored in determining the rate base.

The case is unlike *Missouri ex rel. Southwestern Bell Telephone Co.* v. *Public Service Commission, ante,* 276. Here the Commission gave careful considera-

tion to the cost of reproduction; but it refused to adopt reproduction cost as the measure of value. It declared that the exercise of a reasonable judgment as to the present " fair value " required some consideration of reproduction costs as well as of original costs, but that " present fair value " is not synonymous with " present replacement cost ", particularly under abnormal conditions. That part of the rule which declares the utility entitled to the benefit of increases in the value of property was, however, specifically applied in the allowance of $125,000 made by the Commission to represent the appreciation in the value of the land owned. The lower court recognized that it must exercise an independent judgment in passing upon the evidence; and it gave careful consideration to replacement cost. But it likewise held that there was no rule which required that in valuing the physical property there must be " slavish adherence to cost of reproduction, less depreciation." It discussed the fact that since 1914 large sums had been expended annually on the plant; that part of this additional construction had been done at prices higher than those which prevailed at the time of the rate hearing; and it concluded that " averaging results, and remembering that values are . . . matters of opinion, . . . no constitutional wrong clearly appears."

The refusal of the Commission and of the lower court to hold that, for rate-making purposes, the physical properties of a utility must be valued at the replacement cost less depreciation was clearly correct. As was said in *Minnesota Rate Cases,* 230 U. S. 352, 434: " The ascertainment of that value is not controlled by artificial rules. It is not a matter of formulas, but there must be a reasonable judgment having its basis in a proper consideration of all relevant facts."

What these relevant facts are had been stated in *Smyth* v. *Ames,* 169 U. S. 466, 546, 547:

" . . . the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration, and are to be given such weight as may be just and right in each case. We do not say that there may not be other matters to be regarded in estimating the value of the property. What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience. On the other hand, what the public is entitled to demand is that no more be exacted from it for the use of a public highway than the services rendered by it are reasonably worth."

And in *Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19, 52, it had been made clear " that the value of the property is to be determined as of the time when the inquiry is made regarding the rates. If the property, which legally enters into the consideration of the question of rates, has increased in value since it was acquired, the company is entitled to the benefit of such increase."

The rule laid down in these cases was expressly recognized as controlling, both by the Commission and by the lower court. Evidence bearing on most of the facts there declared to be relevant facts was before them. The court states, and the record establishes, that the " opinion of the . . . Commission . . . evinces a full and conscientious consideration of the evidence." The opinion of the court shows that it also made careful examination of the evidence submitted and that it recognized the applicable rules of law. While it differed from the Commission in some matter of detail, it sustained the latter's finding that the value was $5,250,000. The question on which this Court divided in the *Southwestern Bell Telephone Case, supra,* is not involved here.

*Second.* Two objections to the valuation relate to the exclusion of items from the rate base, namely: the franchise to do business in Atlanta, said to be worth $1,000,-000, and so-called losses from operations during recent years, alleged to aggregate $1,000,000. These items were properly excluded. The franchise in question is not a monopoly. It is merely a perpetual permit, granted by the legislature in 1856, to maintain gas mains in the streets, alleys, and public places of Atlanta without the necessity of securing the consent of the municipality. That such franchises are to be excluded in fixing the rate base was settled by *Cedar Rapids Gas Light Co.* v. *Cedar Rapids,* 223 U. S. 655, 669; *Des Moines Gas Co.* v. *Des Moines,* 238 U. S. 153, 169, and *Galveston Electric Co.* v. *Galveston,* 258 U. S. 388. The allowance for the franchise made in *Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19, 43, 44, 48, was rested on special grounds which do not exist in this case. That past losses are not to be capitalized as property on which the fair return is based was held in *Knoxville* v. *Knoxville Water Co.,* 212 U. S. 1, 14; *Galveston Electric Co.* v. *Galveston,* 258 U. S. 388. Here this conclusion seems even clearer than it was in those cases. The losses under consideration in the case at bar were obviously not a part of development cost. They were due to insufficiency of previous rates.

*Third.* Two further objections to the rate base relate to items of property included in it, which are alleged to have been undervalued. The companies contend that the working capital required was $420,000, whereas only $266,677 was allowed. They also contend that the " going concern " value is at least $750,000, whereas only $441,629 was allowed. These are findings of fact made by the Commission and approved by the lower court. We are not satisfied that either finding is erroneous.

*Fourth.* The companies contend that there was error, also, in estimating the amount of the probable net in-

come. One objection relates to the federal corporate income tax (10 per cent.) assumed to be $45,364. The Commission treated the tax as a proper operating charge. The court disallowed it; and thus increased its estimate of probable net income. In this the court erred. *Galveston Electric Co.* v. *Galveston,* 258 U. S. 388. Its estimate of " $424,150 as the probable income per year under the new rate, with no allowance made for increased consumption or reduced cost of production that seem quite probable " should therefore be reduced to about $380,000. This is the amount indicated by the Commission's findings.

The other objections relate to the amount of the depreciation charge. The companies say the rate should be 2½ per cent. The Commission and the court allowed only 2 per cent. This question is one of fact, and we are not convinced that it was wrongly decided below. The amount of the depreciation charge is also objected to on the ground that the percentage should have been figured on a larger value. This objection depends upon the value to be placed upon the physical property which has already been discussed.

*Fifth.* The probable return based on the value and the probable income found by the Commission would be nearly 7¼ per cent. It must be borne in mind, as pointed out in *Galveston Electric Co.* v. *Galveston, supra,* that, since dividends from the corporation are not included in the income on which the normal federal tax is payable by stockholders, the tax exemption is, in effect, an additional return on the investment. A return of 7¼ per cent.— in addition to this tax exemption—can not be deemed confiscatory. The solicitude of the Commission to secure to the companies a fair return is shown by its treatment of them during the three years preceding the order here in question. Long prior to 1918, the gas rate had been fixed

by the utility at one dollar.   Operating and construction costs having risen owing to the world war, the Commission raised the rate to $1.15 effective September 1, 1918; to $1.35 effective October 1, 1920; to $1.90 effective March 1, 1921.   After costs had fallen materially, the rate was reduced to $1.65 June 1, 1921; and the order to reduce it to $1.55 was entered, effective January 1, 1922.   In making each of these changes the Commission fixed a rate which it estimated would permit the company to earn a return of about 8 per cent. on the fair value of the property.   Each change of rate was made upon careful consideration.   If there was error, it was error in prophecy or error of judgment in passing upon the evidence.   We cannot say that the evidence compelled a conviction that the rate would prove inadequate.   Compare *San Diego Land & Town Co.* v. *National City,* 174 U. S. 739, 754; *San Diego Land & Town Co.* v. *Jasper,* 189 U. S. 439; *Knoxville* v. *Knoxville Water Co.,* 212 U. S. 1, 17; *Galveston Electric Co.* v. *Galveston,* 258 U. S. 388, 401, 402.   Moreover, the decree is merely interlocutory.

*Affirmed.*

Mr. Justice McKenna, dissenting.

I am constrained to dissent on the authority of *Missouri ex rel. Southwestern Bell Telephone Co.* v. *Public Service Commission, ante,* 276; and *Bluefield Water Works & Improvement Co.* v. *Public Service Commission,* decided today, *post,* 679.

These two cases follow other cases which they cited, including that of *Smyth* v. *Ames,* decided a quarter of a century ago, declaring the rule of regulation to be, that in order to fix a rate for the use of property devoted to the public service, the property must be estimated " at the time it is being used for the public."   And again, " that the value of the property is to be determined as of the time when the inquiry is made regarding rates."

The Commission in the present case conceded the rule, and violated it, and upon a unique justification.  It said " The human race is only recovering from an experience the like of which the world never before endured—a world war—a world upheaval—an economic cataclysm. There are no stable measures of value today."  Upon this the Commission departed from the values which then prevailed, and from those that the rule of law prescribed, that is, the values prevailing *at the time the property was being used for the public,* and reverted to the values which obtained January 1, 1914,—values that had not existed for over seven years, and no prophecy could say when, if ever, they would exist again.[1]

To separate the Company from the conditions which existed at the time of regulation was arbitrary and condemned the Company to accept an inadequate return upon the value of its property, not only for the then time, but for an indefinite future time.  Similar action was condemned in the *Telephone Case*—no " economic cataclysm" repelling.  Similar action was condemned in the *Bluefield Case*—no " economic cataclysm" repelling.[2] May I ask what had become of the " cataclysm"?  Had it settled in Georgia in conscious indulgence to life and

---

[1] An expert witness of the Commission testified as follows: "I do not incline to the extreme high values of the war time period, but believe that when business does resume prices will again stabilize at figures considerably lower than the peak of 1920, but far above any pre-war level."

[2] The lower federal courts have not felt the bewildering effect—impotent effect I might say—that the Commission discovered in the post-war conditions.  *St. Joseph Railway, etc., Co.* v. *Public Service Commission,* 268 Fed. 267; *Landon* v. *Court of Industrial Relations,* 269 Fed. 433, 444; *Potomac Electric Power Co.* v. *Public Utilities Commission,* 276 Fed. 327; *Public Service Ry. Co.* v. *Board of Public Utilities Commissioners,* 276 Fed. 979.  And a state court has been equally free from confusion.  *Petersburg Gas Co.* v. *Petersburg,* 132 Va. 82.

business in other parts of the country from its bewildering influence?

The contrariety of decision cannot be reconciled. To anticipate a possible criticism, however, I should say a distinction is attempted to be made between this case and the *Telephone Case,* a distinction, I think, not sustained by the record. It is said that the present case is unlike the *Telephone Case,* in that, " here the Commission gave careful consideration to the cost of reproduction; but it refused to adopt reproduction cost as the measure of value." The omission was the Commission's error—it was in disregard of the rule of the cases, disregard of the value of the utility at the time of its regulation—the time it was being used by the public. And such value was available. The problem was direct and simple—with no baffling element in it. It was only to find the reproduction cost of the utility, and this, necessarily, was constituted of the cost of its materials, and the cost of their fabrication, less an estimate of depreciation from the new. These costs and depreciations representing its value at the moment of time it was being regulated and being used by the public, such moment being the time prescribed by the law for the determination of its value—the determination of that upon which the rate for its use was to be based.

There was nothing obscure or puzzling about it. The cost of the materials and of their fabrication was as much a measure of the value of the utility when reproduced as the cost of materials and their fabrication were a measure of the value of the utility when it was produced—a measure of value of reproduction and production. A measure, it is true, of different degree which it was the duty of the Commission to regard, and because the Commission did not regard it, that is, because it did not consider the values at the time it was acting, its action was condemned. There are words in the

*Telephone Case* that are pertinent here.   Here, as there, a Commission undertook to value the property of a utility without according any weight to the greatly enhanced costs of material, labor, supplies, etc., over those prevailing at a prior time.   And it may be said here, as it was said there, " as a matter of common knowledge these increases were large."

The error in this case being of like kind to that which was committed by the Commission in that case, it should be visited by the same treatment, that is, a reversal of its action.

It is supposed that this case and the *Telephone Case* cannot coexist as declarations of law, without explanation.   No attempt, however, is made to justify this case and the *Bluefield Case*.   It seems to be taken for granted that they can coexist in the books in harmonious association.   Can they?

For answer, it is worth one's while to inquire what the *Bluefield Case* decides.   It is said in the opinion that " The record [in the case] clearly shows that the commission [whose action is reviewed] in arriving at its final figure did not accord proper, if any, weight to the greatly enhanced costs of construction in 1920 over those prevailing about 1915 and before the war, as established by uncontradicted evidence; and the company's detailed estimated cost of reproduction new, less depreciation, at 1920 prices, appears to have been wholly disregarded.   This was erroneous."   Citing the *Telephone Case* as well as other cases.

From this error all of the other errors in the case followed and it, and they, constituted the mistake of the Supreme Court of West Virginia in sustaining the action of the Commission, and the ground of reversal of the Supreme Court.

The cases, this and the *Bluefield Case,* are identical in errors.   In this case the values that existed at the time

of regulation were wholly disregarded, and those of seven years before, those which existed in 1914, that is, before the war, were deliberately selected. This action was affirmed, as I have pointed out, by the District Court from whose decree this appeal was taken. The decree is affirmed, which is the affirmance of the action of the Commission.

In the *Bluefield Case* the value of the utility at the time of regulation "appears", according to the declaration of the Court, "to have been wholly disregarded".

The Supreme Court of West Virginia affirmed the action of the Commission. This Court in its opinion of today reverses that judgment, which is a reversal of the action of the Commission.

It will be observed the Commissions did exactly the same thing, and yet the action of one is affirmed, and the action of the other reversed. This contrariety of decision I cannot reconcile. There should be reversal of both or the affirmance of both if their identities are to be observed. I, therefore, must dissent from one or the other of the cases, and as the *Bluefield Case* has the support of the *Telephone Case,* I dissent from the present case, there being a majority against it, and those cases, besides, expressing my view of the law.

It may be said that if I get rid of the Commission's action, I must take account of the District Court's judgment of it upon an independent consideration of the record. I realize that the challenge has serious strength, but as the Court's opinion is very long, I can only meet the challenge by what I consider the error of the opinion. The Court disregarded, as the Commission did, the rule of law that the value of the Company's utility should be at the time it was being regulated, that is, at the time it was being used. The Court, however, did not entirely agree with the Commission. It said "in ascertaining the present value of physical properties, though correct

rules were announced by the Commission, we do not think they were exactly followed." And again, " The Commission did not allow the appreciation claimed on the investment since 1914, nor did it deduct from the investments of 1919 and 1920 and 1921, which were nearly a million dollars their admitted reproduction loss, but it did allow the appreciation in market price of real estate."

The last observation I do not pass upon as it has no consequential bearing on the question in the case. And I proceed to say that I have the impression that the Court's decision on the Commission's action was influenced by the Court's constitutional views. The Court said that "A rate established as reasonable, whether by the company or by the Commission is not guaranteed by the Commission or by the public. Whether it will actually yield more or less than a fair return during its continuance is a risk of the business " to which the company had devoted its property.

If this is an intimation that the Court was of the view that even if the action of the Commission resulted in a return to the utility of less than that which would be fair and reasonable it would not encounter the opposition of the Constitution, such view was error and, laboring under the error, I can understand that the Court was not anxiously concerned to investigate the grounds of the Commission's action—not concerned with the " risk of the business."

There are questions upon other elements of value upon which I do not consider it necessary to pass.

I think the order denying the preliminary injunction should be reversed.