# CHARLESTON.

City of Elkins et als. v. Public Service Commission et als.

(No. 5197)

Submitted September 3, 1924.  Decided October 26, 1926.

Gas—*Gas Company is Entitled to Fair Rate, Not in Excess of
Value of Service, on Present Fair Value of Property, As-
certained as of Time Service is Rendered.*

    A public service company furnishing natural gas to the
public is entitled to a fair rate upon the present fair value
of its property used and useful in the public service, to be
ascertained as of the time the service is rendered. This rule
is subject only to the condition that a utility will never be
permitted to charge more than the value of the service which
it is rendering.

    (Gas, 28 C. J. §§ 40, 43.)

    (Note: Parenthetical references by Editors, C. J.—Cyc. Not
part of Syllabi.)

Appeal from Order of Public Service Commission.

Application of the West Virginia Central Gas Company
and others to the Public Service Commission for an increase
in rates. From an order allowing an increase, the City of
Elkins and others appeal.

*Order affirmed.*

*C. O. Strieby,* for appellants.

*Brown, Ely & Richards* and *Harold A. Ritz,* for respondents.

Litz, President:

Several cities and towns in this State served with natural
gas by the West Virginia Central Gas Company, the West
Virginia & Maryland Gas Company, and the Northern Natural
Gas Company, seek the cancellation of an increase in rates to
West Virginia consumers granted by the Public Service Com-
mission upon the application of these companies.

The property of the applicants is united in ownership and
operation through the Eastern Oil Company, which during the
years of 1898 and 1899 acquired oil and gas leases covering

6,000 acres of land in the natural gas fields of Lewis and Harrison counties, thereafter increasing its holdings to 10,821 acres, as of January 1, 1917. In the development of this and other gas property, later secured by it in Braxton county, the Eastern Oil Company, through the applicants and other subsidiary corporations, organized by it, constructed, and for many years has been operating, a system of pipe lines for the transportation of gas from these fields to various cities and towns in West Virginia and Maryland. Prior to 1918 the applicants were supplied from this source with ample gas to meet the demands of their customers. Since then, however, because of material depletion of these gas fields, they have been unable fully to serve their customers, and after purchasing large quantities of gas from other producers, are using only one-third of the capacity of their pipe line system in public service.

The chief issue presented involves the value of the applicants' property used and useful in the public service. In determining rates the Commission fixed the rate base, or value of the physical property plus going value and working capital, at $3,000,000. Because of a large accrued depreciation reserve, amounting to $2,039,407.35, and the fact that only a small fractional part of the capacity of applicants' plant is being used in serving the public, the protesting consumers contend that the valuation is excessive to the amount of the depreciation reserve, which they say should be deducted from the gross investment or book value of $3,791,258.20, in ascertaining a fair value of the physical property. The utilities, on the other hand, assert that by valuing the property under the reproduction cost theory a greater valuation should have been allowed. The United States Supreme Court has recently held in several cases that the public does not have any interest in accrued depreciation reserve, and that in rate making it cannot properly be charged to the utility. "The revenue paid by the customers for service belongs to the company. The amount, if any, remaining after paying taxes and operating expenses including the expense of depreciation is the company's compensation for the use of its property. If there is no return or if the amount is less than a reasonable

return, the company must bear the loss. Past losses cannot be used to enhance the value of the property or to support a claim that rates for the future are confiscatory. *Galveston Electric Co.* v. *Galveston,* 258 U. S. 388, 395; *Georgia Ry.* v. *R. R. Comm.,* 262 U. S. 625, 632. And the law does not require the company to give up for the benefit of future subscribers any part of its accumulations from past operations. Profits of the past cannot be used to sustain confiscatory rates for the future. *Newton* v. *Consolidated Gas Co.,* 258 U. S. 165, 175; *Galveston Electric Co.* v. *Galveston, supra,* 396; *Monroe Gaslight & Fuel Co.* v: *Michigan Public Utilities Commission,* 292 Fed. 139, 147; *City of Minneapolis* v. *Rand,* 285 Fed. 818, 823; *Georgia Ry. & Power Co.* v. *Railroad Commission,* 278 Fed. 242, 247, affirmed 262 U. S. 625; *Chicago Rys. Co.* v. *Illinois Commerce Commission,* 277 Fed. 970, 980; *Garden City* v. *Telephone Company,* 236 Fed. 693, 696." *Board of Public Utility Comrs.* v. *N. Y. Telephone Co.,* 70 L. Ed. Adv. Op. 436, decided April 12, 1926.

Taking into consideration the excessive capacity of the plant for the service rendered, and rejecting the theory that the depreciation reserve should be deducted from the value of the physical property, the finding in our opinion was well within the discretion of the Commission. The valuations, established by three previous investigations, follow:

| | |
|---|---|
| January 22, 1918 | $3,497,893.36 |
| March 25, 1920 | 3,000,000.00 |
| May 25, 1921 | 3,000,000.00 |

The opinion of the Commission determining the valuation of May 25, 1921, stated that the investment was greater than the total gas rates would warrant under ordinary circumstances, that the plant was of ample capacity to handle more than five times the volume of the gas sold in 1920, and that the logical solution of the difficulty was to increase the volume of business or decrease the plant investment.

A public service company, furnishing natural gas to the public, is entitled to a fair return upon the present fair value of its property used and useful in the public service, to be ascertained as of the time the service is rendered. *City of*

*Charleston* v. *Public Service Commission,* 95 W. Va. 91, 120 S. E. 398. In the opinion of that case it is said:

"We do not understand the Company's counsel to contend that depreciation should never in any event be taken into account in determining the fair value as a rate base. If the reproduction cost new, less depreciation,. plan is adopted, of course, by its very terms depreciation is to be deducted from the reproduction cost; and the result is the rate base. If the value of the property is found by appraising the component parts, or the plant as a whole; then the age of the parts, the use to which they have been put, their probable useful life *and in the case of a natural gas field, the amount of gas withdrawn and the future life of the field must be considered.* In other words, the condition of the property at the time of the appraisal must be found. From necessity, in such cases the depreciation must be considered to ascertain the present·fair value."

The case of *Coal & Coke Company* v. *Conley,* 67 W. Va. 129, 190, recognizes this principle in the following language:

"The capitalization or actual cost may far exceed the utmost value of the (public service) company's property for some reason. The plant may have been built at an extravagant and wasteful cost or may not be well adapted for the uses for which it was intended. Under exceptional or peculiar circumstances what would be ordinarily a reasonable rate of profit on the entire investment is disallowed as being more than the service is worth to the public and therefore unjust to it. If, in construction or purchase, more money has been put into a plant than is required for one adequate to the demands of the community, the usual return on such sum would be more than the service rendered the public is worth. Both the public and the public service investor are to be considered and justice done to each."

Counsel for the applicants concede "that if a utility is disabled from functioning (as a gas company without sufficient source of supply) there would be an increased depreciation in physical elements"; but insist that a new rule in rate making should be applied in this case, fixing the rate

according to what the utility regards as the value of the service, rather than at such amounts as will produce a fair return upon the value of the property used and useful in rendering it. We unhesitatingly answer the proposition, in accordance with *City of Charleston* v. *Public Service Commission*, cited, by repeating that a public service company furnishing natural gas to the public is entitled to a fair rate upon the present fair value of its property used and useful in the public service, to be ascertained as of the time the service is rendered. This rule is subject only to the condition that a utility will never be permitted to charge more than the value of the service which it is rendering.

We do not find sufficient cause in the action of the Commission determining the rate of depreciation reserve, or of any other factor necessary for establishing a proper rate, justifying setting aside or modification of the order complained of.

*Order Affirmed.*