## PUBLIC UTILITIES COMMISSION OF THE DISTRICT OF COLUMBIA v. CAPITAL TRACTION CO.

(Court of Appeals of District of Columbia. Submitted October 5, 1926. Decided February 7, 1927.)

No. 4412.

1. Carriers ⬅12(5)—Rate base valuation of street railway property held to improperly include item representing good will of one of companies previously consolidated (37 Stat. 974; 28 Stat. 700).

Court, making rate base valuation of street railway property on appeal from valuation made

17 F.(2d)—43

by Public Utilities Commission under Act March 4, 1913 (37 Stat. 974), held to have improperly included an item representing good will of one of companies previously consolidated under authority of Act March 1, 1895 (28 Stat. 700).

2. Carriers ⬅12(5)—Generally street railway franchises are not properly included in rate base valuation.

As a general rule, street railway franchises are not to be included in a rate base valuation.

3. Carriers ⬅12(5)—Refusal to make deduction for depreciation from reproduction cost of street railway property in making rate base valuation held not error.

Court, making rate base valuation of street railway property, held not to have erroneously refused to make any deduction for depreciation from estimated reproduction cost, in view of condition of property and sinking fund.

4. Carriers ⬅12(5)—Rate base valuation of street railway is not intended as buying or selling price, company being entitled to rates balancing depreciation, as well as paying reasonable return.

Present valuation of street railway property for rate-making purposes is not intended as a buying or selling price of the property valued; company being entitled to collect rates sufficient to balance depreciation, as well as to pay a reasonable return on invested capital.

Appeal from the Supreme Court of the District of Columbia.

Proceeding before the Public Utilities Commission of the District of Columbia for rate base valuation of property of the Capital Traction Company. From a decree of the court valuing property pursuant to agreement of parties after setting aside Commission's valuation, the Commission appeals. Decree modified, and value of property found.

F. H. Stephens, of Washington, D. C., for appellant.

G. T. Dunlop and G. E. Hamilton, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. This is an appeal by the Public Utilities Commission of the District of Columbia from a decree of the Supreme Court of the District setting aside a rate base valuation of the street railway property of the Capital Traction Company, made by the commission by authority of the Act of March 4, 1913 (37 Stat. 974).

It is provided by that act that the commission, when making such a valuation of the property of a public utility, shall ascertain the amount of money expended for its construction and equipment and for its right of way, the amount it would require to secure

the right of way and reconstruct or replace all of the physical properties belonging to the utility, and also the amount of its outstanding stock, bonds, etc., its gross and net income, and other facts relating to its condition and operation. The commission shall thereupon value the property of the utility actually used and useful for the convenience of the public "at the fair value thereof at the time of said valuation." If any utility be dissatisfied with the commission's valuation, it may commence a proceeding in equity in the Supreme Court of the District to set aside or modify the valuation, and, an appeal may be taken from the court's decree in such case to this court.

In the instant case the commission began its valuation of the property of the Capital Traction Company in the month of April, 1914, and on September 4, 1919, it promulgated its findings, and reported the fair value of the company's property as of June 30, 1919, "used and useful for electric railway operations within the District of Columbia," to be the sum of $14,270,495.51. In arriving at this decision, however, the commission failed to first ascertain the reproduction cost of the property as of the date of the valuation, to wit, June 30, 1919, but instead ascertained the reproduction cost as of July 1, 1914. It then added the subsequent net additions to investment up to June 30, 1919, and accepted the total as the reproduction cost of the property as of the latter date. This was done upon the theory that the increased prices prevailing during the World War were abnormal and temporary, and that reproduction cost should be computed as of July 1, 1914, as normal for the purposes of the valuation.

The company appealed to the Supreme Court of the District, which held that this method of computing reproduction cost was unlawful, being in violation of the express terms of the statute, which requires the value to be determined as of the date of the valuation. The commission's valuation was accordingly set aside, and, it is now conceded that this ruling was correct. Potomac Electric Power Co. v. Commission, 51 App. D. C. 77, 276 F. 327. It was then agreed by the parties that the lower court should find the fair value of the company's property, as defined by the act, as of January 1, 1925. This the court did upon the record before it, and found the value as of that date to be $30,906,880. The commission then appealed to this court.

The total valuation thus found by the lower court was composed of the following items, to wit: $17,937,419 as the net cost of repro-

duction on January 1, 1925, of the company's physical property included within the corresponding valuation found by the commission as of June 30, 1914, less subsequent retirements; $748,182 for the cost of certain lands, and $114,333 for other lands; $309,000 for "preorganization expense"; $30,000 for "preliminary operation expense"; $1,946,281 for "certain right of way expenditures and development costs allowed by the commission and not questioned by plaintiff company"; $4,289,826 as the reproduction cost on January 1, 1925, of all additions to the physical property of the company made between June 30, 1914, and January 1, 1925; $125,688 for materials and supplies on hand; and $256,151 for working capital. These items aggregate $25,756,880, and represent the total reproduction cost new, without deduction for depreciation, of the company's line as of January 1, 1925, considered as a going concern, but not including franchises or good will. The lower court then added to the foregoing total the sum of $5,150,000 as the actual or historical cost to the company of the franchises and good will of the Washington & Georgetown Railroad Company, purchased by the present company, together with the line of the former company, in the year 1895. The inclusion of this item brings the lower court's final valuation of the company's property to the aforesaid sum of $30,906,880.

[1] This item of $5,150,000 for franchises and good will was presented to the commission when making its valuation, and was totally rejected by it. It is now contested by the commission. It appears that the Capital Traction Company first took that name in the year 1895, concurrently with a merger of the intersecting lines of the Washington & Georgetown Street Railroad Company and the Rock Creek Railway Company of the District of Columbia.

The Washington & Georgetown Railroad Company had a capital stock of 10,000 shares of the par value of $50 per share, and a bonded indebtedness of $4,000,000. These bonds, bearing 6 per cent. annual interest, were secured by deed of trust and contained a stipulation that they should be "interchangeable for stock at par whenever the right to increase the capital stock in an amount equal to the amount of bonds issued shall be obtained." The company enjoyed great prosperity, its shares of stock ($50 par) were selling at $275 per share, and its bonds, owing to the provision for interchange with stock at par, were quoted at double par value.

The Rock Creek Railway Company had a capital stock of $1,250,000; it served a territory not yet fully developed, and was operating at a net annual loss. In the year 1895, the Rock Creek Railway Company was authorized by act of Congress (28 Stat. 700) to "contract with any street railway company owning or operating a connecting or intersecting line for the joint management, lease, or purchase of such connecting or intersecting line or lines, and operate the same in connection with its original line; and in case of such contract may provide the means necessary by an increase of its capital stock, not to exceed the actual consideration paid or the actual cost of the necessary equipment." It was also provided by the act that in event the company entered into such a contract as contemplated by the act its directors were authorized to change its name from the Rock Creek Railway Company of the District of Columbia to the Capital Traction Company.

Under authority of this act the Rock Creek Railway Company purchased the line of the Washington & Georgetown Railroad Company, and assumed its present name of the Capital Traction Company. In carrying out this transaction the company issued its corporate shares to the amount of $12,000,000, of which $2,750,000 were delivered to the stockholders of the vendor company in exchange for their stock in that company, being at the rate of $275 per share, and $8,000,000 were delivered to the bondholders of the vendor company in payment of their bonds at double par value. The remaining $1,250,000 went to the stockholders of the Rock Creek Railway Company for their stock at par in that company.

It appears that the book value of the property of the Washington & Georgetown Railroad Company at the time of the transaction was only $5,103,376.25; in other words, the purchase price paid in stock by the Capital Traction Company for the property of the Washington & Georgetown Railroad Company, amounted to $5,646,623.75 over its book value at the time of the purchase. This resulted, of course, chiefly from the payment of $8,000,000 in stock for the $4,000,000 of bonds as already noted. It is claimed by the company that this excess over the book value of the properties of the vendor company was paid for its franchises and good will. The lower court approved this claim, and accordingly added the sum of $5,150,000 as aforesaid to the reproduction cost of the company's physical properties and the various other intangible items already included within the valuation.

In our opinion this allowance was erroneous. The claim that the sum of $5,150,000 was paid for the franchises and good will of the Washington & Georgetown Railroad Company is not substantial, since the amount paid was manifestly based upon the prices of its stocks and bonds then prevailing in the stock markets, and these prices were largely speculative. No charge of bad faith is made respecting the merger, although comment is made upon the fact that the 6 per cent. bonds in question were redeemable at par within 10 years after their date at the option of the debtor company, and that three-fourths of them were redeemable within 4 years after the date of the merger, and one-half of the remainder in less than 8 years thereafter. Moreover, the bonds were not convertible into stock at par unless and until "the right to increase the capital stock in an amount equal to the amounts of bonds issued shall be obtained," and no such permission was ever actually obtained.

Stress, however, is laid by the company upon the fact that, since the merger the validity of the stock thus issued has never been questioned, but has been continuously bought and sold, and is now held in good faith by the public. It is likewise claimed that the merger received legislative approval by virtue of the acts relating to the franchises of the respective companies, and that the interests of the public were protected by a proviso that the merger should not be effective without the consent of the commissioners of the District of Columbia. The Act of March 1, 1895, however, under which the merger was effected, does not undertake to prescribe the prices or terms upon which such a merger might be effected, nor does it require the consent of the District commissioners as conditional thereto.

Moreover, the record does not disclose that such consent was ever actually given. It is true that a proviso of this character appears in the Act of June 23, 1888, 25 Stat. 199, 202, but that statute did not govern the transaction in question. In our opinion, no greater consideration should be given to the franchises acquired from the Washington & Georgetown Railroad Company than would be given them if that company were still a going concern and a valuation should be made of its property under the act. Nor do we see any reason for excluding the franchises of the Rock Creek Railway Company from the valuation, if those of the Washington & Georgetown Railroad Company be included therein.

[2] It is a general rule that franchises of

this character are not to be included in a rate base valuation. Cedar Rapids Gaslight Co. v. Cedar Rapids, 223 U. S. 655, 669, 32 S. Ct. 389, 56 L. Ed. 594; Georgia Ry. & Power Co. v. R. R. Comm., 262 U. S. 625, 632, 43 S. Ct. 680, 67 L. Ed. 1144. The instant case is not governed by Willcox v. Consolidated Gas Co., 212 U. S. 19, 29 S. Ct. 192, 53 L. Ed. 382, 15 Ann. Cas. 1034, 48 L. R. A. (N. S.) 1134, for in that case the franchises were expressly named by statute as elements of value to be included in the consolidation. Moreover, the court's opinion in that case contains the following admonition respecting its authority as a precedent, to wit:

"What has been said herein regarding the value of the franchises in this case has been necessarily founded upon its own peculiar facts, and the decision thereon can form no precedent in regard to the valuation of franchises generally, where the facts are not similar to those in the case before us. We simply accept the sum named as the value under the circumstances stated."

See, also, comments of Judge Hand in Consolidated Gas Co. v. Newton, Atty. General (D. C.) 267 F. 231, 240, affirmed 258 U. S. 165, 42 S. Ct. 264, 66 L. Ed. 538.

Good will likewise should be excluded from such a valuation: Willcox v. Consolidated Gas Co., supra; Des Moines Gas Co. v. Des Moines, 238 U. S. 153, 169, 35 S. Ct. 811, 59 L. Ed. 1244. Nor can past losses be capitalized as property on which to base rates. Knoxville Water Co. v. Knoxville, 212 U. S. 1, 14, 29 S. Ct. 148, 53 L. Ed. 371; Galveston Electric Co. v. Galveston, 258 U. S. 388, 42 S. Ct. 351, 66 L. Ed. 678; Ga. Ry. v. R. R. Comm., supra. We hold, accordingly, that the sum of $5,150,000 should be deducted from the valuation found by the lower court, thereby reducing the total valuation to the sum of $25,756,880.

[3] The commission complains that the lower court made no deduction for depreciation from its estimate of the reproduction cost of the company's property. In the commission's valuation it was reported by the engineers that the deduction for depreciation should exceed the sum of $2,000,000, but the commission stated:

"As previously explained, the commission approves this amount as representing true accrued depreciation, but concludes that, in the present finding of fair value as a basis for rates, a *materially lesser* amount should now be deducted from costs new."

The record does not disclose what specific sum was thus deducted by the commission.

The lower court, however, found that no such deduction should be made, for the reason that the company had maintained a sinking fund for the protection of its property against depreciation, and is annually setting aside a portion of its earnings and adding the same to such fund, and that the record fails to disclose that the rates of fare heretofore fixed by the commission have been adequate to justify any deduction for accrued depreciation from the fair value of the company's property. It appears from the record that the company has a sinking fund for depreciation of $2,075,155.18, of which $1,156,930.70 is "invested in property of the company," and the residue is in cash and productive securities. It also appears that the property of the company has been maintained in the highest condition in point of material construction and efficiency, and there is no testimony in the record as to actual depreciation of the property.

We are convinced that under all the circumstances the decision of the lower court upon this subject should not be disturbed. On the record before us any such deduction would necessarily rest upon doubtful theories only. It may be assumed that the sinking fund maintained by the company, part of which has been employed consistently with its proper purpose, is sufficient to balance the actual depreciation of the property, and this fund does not enter into the rate-bearing valuation.

[4] It must be remembered, moreover, that the present valuation is not intended as a buying and selling price of the property, but for rate-making purposes, and the company is entitled to collect rates sufficient to balance the depreciation, as well as to pay a reasonable return upon the invested capital. New York & Queens Gas Co. Case (D. C.) 1 F.(2d) 351, 365; Southern Bell Telegraph & Telephone Co. v. Railroad Commission (D. C.) 5 F.(2d) 77, 95; Brooklyn Union Gas Co. v. Prendergast (D. C.) 7 F.(2d) 628, 668.

Accordingly we modify the decree of the lower court, and do find, adjudge, and decree that the value of the property of the Capital Traction Company actually used and useful for the convenience of the public, at the fair value thereof on January 1, 1925, was $25,756,880. It is furthermore ordered, adjudged, and decreed that the commission and its successors in office shall forthwith modify their former valuation and order in accordance herewith; costs to be equally divided between the parties.