MILO WATER COMPANY *vs.* INHABITANTS OF TOWN OF MILO.

Kennebec.      Opinion, June 14, 1934.

*McLean, Fogg & Southard,* for plaintiff.
*Ryder & Simpson,*
*C. W. & H. M. Hayes,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

THAXTER, J.   In 1909 the parties to this action entered into a contract under the terms of which the plaintiff company agreed to supply water to the defendant. This contract was to run for twenty years. The town agreed to pay $1500 per year for the use of forty hydrants, and for certain other services enumerated in the contract "such further sum each year as shall equal the amount of tax, if

any, assessed against said company by said Town of Milo during said year." Rates to be charged private consumers were also established. In 1920 on petition of the company the Public Utilities Commission entered a decree increasing the rates for all classes of service, and the annual hydrant rental was raised from $37.50 to $40.00 per hydrant. On February 13, 1926, the water company filed another petition with the commission asking for a further increase in rates. September 30, 1927, an order was entered providing for numerous modifications in rates and increasing the annual hydrant rental from $40.00 to $60.00. In promulgating this the commission made the following statement: "We shall assume that the water company and the town of Milo will continue to be guided by the terms of the present contract, except as modified by this and former decrees of this Commission." Obviously what the commission meant was that in figuring the operating expenses of the company no consideration was given to the item of taxes, for it was assumed that these would be remitted to the company as provided for in the original contract. April 1, 1928, the town assessed a tax on the water company, the part of which applicable to the water system amounted to $3,837.93. On August 1, 1928, the company again petitioned the Public Utilities Commission for an increase in rates to meet this additional operating cost. October 26, 1928, the commission filed a decree directing the company to charge $140 for hydrant rental in place of $60; and it is perfectly clear that this modification was authorized to compensate for the taxes which the company was then forced to pay. To an action of debt brought to collect this tax the company entered a defense. The case was reported to this Court, and it was held that the town was under no legal obligation to refrain from taxing the water company. *Inhabitants of Town of Milo* v. *Milo Water Co.*, 131 Me., 372. The present suit is brought to recover the sum of $5,269.33, an amount claimed to be due for hydrant rental to November 1, 1928, amounting to $4,160 and $1,109.33 for interest. It is before us on report.

The plaintiff's contention is that the order of the Public Utilities Commission which became effective October 1, 1927 and increased the hydrant rental to $60 was based on the assumption that the water company would not have to pay taxes, that by reason of the assessment the town thereafter received a benefit from

the plaintiff for which it has not paid, and that consequently it is liable to the plaintiff either in an action on an account annexed or on a quantum meruit for the service rendered to it. The plaintiff contends that it is entitled to receive for the period in question the extra sum of $80 per hydrant, the amount which the Public Utilities Commission fixed as necessary to compensate the company for the increase in taxes.

The Town of Milo could not constitutionally have exempted the water company from the payment of taxes even in return for the services rendered. *Brewer Brick Company* v. *Inhabitants of Brewer*, 62 Me., 62 ; *Inhabitants of the Town of Milo* v. *Milo Water Co.*, supra. It was lawful, however, for the town as consideration for water supplied to contract to pay the company each year a sum equivalent to the taxes assessed provided such agreement was reasonable and fair, *City of Belfast* v. *Belfast Water Company*, 115 Me., 234 ; and the subsequent passage of the act creating the Public Utilities Commission did not alter any of the terms of such contract. All of its provisions remained binding on the parties until the commission found that they were unjust or unreasonable in any particular. *Inhabitants of North Berwick* v. *North Berwick Water Company*, 125 Me., 446. After such determination it became the duty of the commission to modify the unreasonable terms of the contract, or if necessary to abrogate it altogether. *In re Searsport Water Company*, and *In re Lincoln Water Company*, 118 Me., 382.

The plaintiff can recover only on the assumption that that part of the contract providing for reimbursement by the town of taxes paid by the company remained in force in spite of the jurisdiction taken by the Public Utilities Commission over the subject-matter, for the commission had no power to require the town to carry out this provision of the agreement as a part of its order fixing rates. *In re Caribou Water, Light and Power Company*, 121 Me., 426. It becomes necessary, therefore, to determine whether this part of the contract was in effect at the time when the taxes were assessed in 1928.

On two separate occasions the commission on petition of the plaintiff had made substantial increases in the rates fixed by the contract. In fact very little was left of its provisions in respect to rates. At the time of entering the second order, the commission

implied that its continuance was contingent on the remission of the taxes to the water company as provided for in the contract. The commission did not intend to infer that this part of the contract was then enforcible; it only stated that the rates were established on the assumption that the policy of the town in remitting or paying back the taxes would continue. When the tax assessment was made, the company petitioned for an advance in rates to take care of the added burden. The basis for such plea must have been that such tax was lawfully assessed, and that the right of the company to claim reimbursement from the town had been lost. Indeed we feel that, in view of the action taken by the parties to this litigation and by the Public Utilities Commission during the preceding eight years, it is unreasonable to suppose that either the town or the company regarded the provisions of the contract fixing the compensation of the plaintiffs as in force. All concerned had regarded the contract in this respect as abandoned, and had submitted to the administrative commission set up by the statute the question of the rates to be charged the town for water.

It may be argued that the order of the commission of Oct. 26, 1928, was not effective to reimburse the company for the taxes which it was obliged to pay for the period prior to the time when the order became operative. But such decrees are not ordinarily retrospective. They are intended to cover conditions as they are expected to be in the future and not to compensate for the past. *Galveston Electric Company* v. *Galveston,* 258 U. S., 388; *Georgia Railway & Power Co.* v. *Railroad Commission of Georgia,* 262 U. S., 625. No other method of fixing rates is practicable.

The water company, if it considered that the order of the commission entered October 26, 1928, was erroneous in law in not giving to the company the revenue to which it was entitled, had its remedy by exception, as provided in Rev. Stat., 1916, Ch. 55, Sec. 55, as amended. Its right at law to recover the amount of taxes paid to the town was gone.

*Judgment for the defendant.*